760 So.2d 137 (2000)
Thomas H. PROVENZANO, Appellant,
v.
STATE of Florida, Appellee.
No. SC99-32.
Supreme Court of Florida.
May 25, 2000.
*138 Michael P. Reiter, Chief Assistant CCRC, Capital Collateral Regional Counsel-Middle Region, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, Carolyn M. Snurkowski, Assistant Deputy Attorney General, Tallahassee, Florida, and Carol M. Dittmar and Kenneth S. Nunnelley, Assistant Attorneys General, Tampa, Florida, for Appellee.
PER CURIAM.
Thomas H. Provenzano appeals an order entered by the circuit court finding him competent to be executed. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we affirm the circuit court's order.
In June of 1999, the Governor signed a death warrant for Provenzano and set the execution for Wednesday, July 7, 1999. On Monday, July 5, 1999, Provenzano submitted filings to the Governor, wherein he claimed that he was incompetent to be executed. As required by statute, the Governor stayed the execution on Tuesday, July 6, 1999 (the day before the execution was to take place), and appointed a commission of three psychiatrists to examine Provenzano. After receiving the report of the commission, the Governor determined that Provenzano had the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him. The Governor lifted the stay and reset the execution for Wednesday, July 7, 1999.
Subsequently, Provenzano filed a motion for a hearing on his incompetency claim in the circuit court pursuant to Florida Rule of Criminal Procedure 3.811. In order to give the circuit court time to consider the motion, this Court stayed Provenzano's execution until Friday, July 9, 1999. On Wednesday, July 7, 1999, the circuit court denied Provenzano's motion without a rule 3.812 hearing. On Thursday, July 8, 1999, this Court granted a stay of execution and directed the parties to submit briefs concerning the constitutionality of the electric chair and the procedures for obtaining a Florida Rule of Criminal Procedure 3.812 hearing. The question regarding the constitutionality of the electric chair has since been resolved. See Provenzano v. Moore, 744 So.2d 413 (Fla.1999) (holding that electrocution is not unconstitutional); Ch. 00-2, §§ 1-2, Laws of Fla. (providing inmates with a choice between lethal injection and electrocution) (signed into law by the Governor on Jan. 14, 2000); Sims v. State, 754 So.2d 657 (Fla.2000) (holding that the retroactive application of the choice statute *139 did not violate the Ex Post Facto clauses of the state and federal constitutions).
In Provenzano v. State, 751 So.2d 37 (Fla.1999), this Court reversed the circuit court's July 7, 1999, order and remanded for an evidentiary hearing on the issue of Provenzano's competency to be executed, pursuant to rule 3.812. The circuit court subsequently held a rule 3.812 hearing, but refused to grant Provenzano a continuance in order to allow Dr. Patricia Fleming, a key mental health expert, the opportunity to testify. Therefore, in Provenzano v. State, 750 So.2d 597 (Fla.1999), this Court again remanded this case to the circuit court in order to allow Dr. Fleming a reasonable opportunity to testify.
As a result of this Court's most recent remand, the circuit court held further proceedings. Dr. Fleming was given the opportunity to testify, as well as other witnesses from both the State and the defense. In fact, at the close of all the evidence, counsel for Provenzano stated on the record that he had presented everything that he had to offer on behalf of Provenzano. Thereupon, the circuit court entered an order finding Provenzano competent to be executed. That order is the subject of this appeal.
The United States Supreme Court has concluded that the death penalty serves two important purposes: retribution and deterrence of capital crimes by prospective offenders. See Gregg v. Georgia, 428 U.S. 153, 183-86, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion). "[A] state can only execute a condemned prisoner if it contributes to these [two purposes]." Martin v. Dugger, 686 F.Supp. 1523, 1569 (S.D.Fla.1988), aff'd, 891 F.2d 807 (11th Cir.1989). In Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), the Supreme Court held that the execution of a defendant who becomes incompetent after conviction is prohibited by the Eighth Amendment of the United States Constitution. The Court did not set forth the standard for determining incompetency. However, Justice Powell, in his concurring opinion, did provide guidance:
Florida requires the Governor to stay executions of those who "d[o] not have the mental capacity to understand the nature of the death penalty and why it was imposed" on them. A number of States have more rigorous standards, but none disputes the need to require that those who are executed know the fact of their impending execution and the reason for it.
Such a standard appropriately defines the kind of mental deficiency that should trigger the Eighth Amendment prohibition. If the defendant perceives the connection between his crime and his punishment, the retributive goal of the criminal law is satisfied. And only if the defendant is aware that his death is approaching can he prepare himself for his passing. Accordingly, I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it.
477 U.S. at 421-22, 106 S.Ct. 2595 (Powell, J., concurring) (citations omitted) (footnote omitted). In Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), a majority of the Court subsequently agreed with the minimal standard articulated by Justice Powell. See id. at 333, 109 S.Ct. 2934 (stating that defendants who are "unaware of the punishment they are about to suffer and why they are to suffer it" cannot be executed) (quoting Ford v. Wainwright, 477 U.S. at 422, 106 S.Ct. 2595 (Powell, J., concurring)). In Martin, Judge King offered additional guidance:
Similar to th[e] retributive purpose analysis, the execution of a prisoner without an appreciation of the connection between his crime and punishment would be a disservice to the deterrence aspect of capital punishment. The essence of this deterrence purpose is the rational concept that if you do this act *140 society considers heinous you will be killed; that is, society will make you an example to others so that their acts conform to the accepted standards of humanity. The execution of a person who cannot appreciate the connection between his crime and punishment would be tantamount to an act of inhumanity....
If both purposes behind the death penalty are to be served, and, therefore, the sentence is to be carried out in accordance with the eighth amendment, the defendant must at least appreciate the connection between his crime and punishment.
686 F.Supp. at 1570.
Florida has adopted the Eighth Amendment standard announced by Justice Powell in Ford. See rule 3.812(b) ("whether the prisoner lacks the mental capacity to understand the fact of the pending execution and the reason for it"). In its order, the circuit court found that despite his delusional belief that he is Jesus Christ, Provenzano has a factual and rational understanding of "the details of his trial, his conviction, and the jury's recommendation by a vote of seven to five that he be sentenced to death" and of "the fact that in accordance with the jury's recommendation, he was sentenced to death for the murder of Bailiff Arnie Wilkerson, and that he will die once he is executed." Thus, the circuit court concluded that Provenzano is competent to be executed.
In Medina v. State, 690 So.2d 1255, 1256 (Fla.1997), this Court applied the competent, substantial evidence standard of review to the trial court's order pursuant to a rule 3.812 hearing. Applying that standard of review to the present case, we find that the record contains competent, substantial evidence to support the circuit court's order. State experts Dr. Harry McClaren, Dr. Leslie Parsons, and Dr. Alan J. Waldman all testified that Provenzano is competent to be executed.
As indicated by the circuit court, this case is troubling because there is evidence that Provenzano has "mental health problems of some degree." The circuit court acknowledged these problems in its findings of fact and concluded that Provenzano suffers from mental illness, but because he also exaggerates symptoms and utilizes deception, it is difficult to determine Provenzano's exact mental status. However, in this context, the Eighth Amendment only requires that defendants be aware of the punishment they are about to suffer and why they are to suffer it. See Ford, 477 U.S. at 422, 106 S.Ct. 2595 (Powell, J., concurring). The circuit court found that Provenzano "does not lack the mental capacity to understand the fact of his pending execution and the reason for it"; therefore, both the Ford standard and the purposes behind death penalty have been met in this case. The record contains competent, substantial evidence to support this determination. Accordingly, we affirm the order of the circuit court finding Provenzano competent to be executed.
It is so ordered.
HARDING, C.J., and WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which SHAW, J, concurs.
ANSTEAD, J., dissenting.
In his order, Judge Bentley[1] found as fact by clear and convincing evidence that Provenzano has a delusional belief that he is Jesus Christ, and this belief predates the tragic episode involved herein by several years; and, further, there is clear and convincing evidence establishing that Provenzano has a delusional belief that the real reason he is being executed is because he is Jesus Christ:

*141 Thomas Provenzano has, for over twenty years on occasion, believed that he is Jesus Christ. In conjunction with this delusional belief, Provenzano believes that he is not going to be executed because he murdered another human being, but that he really will be executed because he is Jesus Christ.
In other words we have a judicial finding that Provenzano not only has long suffered from a serious mental illness, but also that Provenzano's illness has caused him to be out of touch with reality in that he has long believed he is Jesus Christ and he is being put to death because of who he is, not because of anything he did.
In determining whether Provenzano is incompetent under rule 3.812, Judge Bentley struggled with the proper test to be applied:
What does the standard for competency to be executed and specifically rules 3.811 and 3.812 mean? Is a rational acceptance of the reasons for execution necessary? No. Many defendants, without mental health problems, maintain their innocence though, under the facts, such a position is irrational. This can be said to be a fairly normal human reaction. The standard does not require this.
Going one step further, we have a situation in which Provenzano's rejection is based on a delusional belief. The Court finds that the acceptance of the reasons for sentencing, whether rational, irrational, or delusional, is not part of the current standard for competency to be executed. In other words, under the current standard, acceptance of the reasons is a separate issue from a rational understanding of the process. The present standard is a minimal standard. If the Court has wrongly interpreted the present legal standard, the ultimate finding of this Order will be in error.
In Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), the United States Supreme Court held that the execution of a defendant who becomes incompetent after conviction is violative of the Eighth Amendment. The Court did not set forth the standard for determining incompetency. However, Justice Powell, the controlling swing vote for the decision, provided guidance in his concurring opinion: "I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." Id. at 422, 106 S.Ct. 2595. Justice Powell added that the defendant must be able to connect the execution to the crime for which he or she was convicted. See id. at 423, 106 S.Ct. 2595. Although Justice Powell's standard was not controlling at the time Ford was released, a majority of the Court subsequently agreed that the Eighth Amendment bars execution of prisoners who are "unaware of the punishment they are about to suffer and why they are to suffer it." Penry v. Lynaugh, 492 U.S. 302, 333, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Many courts have referred to this standard as the "cognitive" test. See, e.g., Singleton v. State, 313 S.C. 75, 437 S.E.2d 53, 56 (1993). Thus, the Eighth Amendment requires that the defendant recognize not only the punishment but also the reason for the punishment being applied to her.
Several courts have articulated standards for determining whether a defendant is incompetent to be executed. Many of these courts have relied on Justice Powell's cognitive test from Ford. See Barnard v. Collins, 13 F.3d 871, 876 n. 2 (5th Cir. 1994); Rector v. Clark, 923 F.2d 570, 572 (8th Cir.1991); Billiot v. State, 655 So.2d 1, 16 (Miss.1995) ("He must comprehend the reasons for the penalty and its implications, he must understand the penalty's existence and purpose,' and in order for the retributive goal of the criminal law to be satisfied, he must `perceive the connection between his crime and his punishment,' and be `aware that his death is approaching [so] he can prepare himself for his passing.'"); Van Tran v. State, 6 *142 S.W.3d 257, 266 (Tenn.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 1728, 146 L.Ed.2d 648 (2000); Ex parte Jordan, 758 S.W.2d 250, 254 (Tex.Crim.App.1988) ("whether applicant was capable of comprehending the nature, pendency, and purpose of his execution"); see also Ariz.Rev. Stat. Ann. § 13-4021(B) (West Supp.1998); Ga.Code Ann. § 17-10-60 (1997); Ky.Rev. Stat. Ann. § 431.213 (Michie Supp.1999); N.Y. Correct. Law § 656(1) (McKinney Supp.2000); Tex.Crim. P.Code Ann. § 46.04(h) (West Supp.2000); Wyo. Stat. Ann. § 7-13-901(a)(v) (Michie 1999). Other states have adopted the ABA standard of incompetency,[2] which seems to encompass Justice Powell's cognitive prong. See Singleton, 437 S.E.2d at 55-56 (adopting a modified version of the ABA standard); see also Miss.Code Ann. § 99-19-57(2)(b) (1999); Mo.Rev.Stat. § 552.060(1) (Supp. 2000); State v. Harris, 114 Wash.2d 419, 789 P.2d 60, 66 (1990).
Unfortunately, few courts have provided a detailed analysis regarding the requirement that a prisoner understand the reason for his execution. However, in Martin v. Dugger, 686 F.Supp. 1523 (S.D.Fla. 1988), aff'd, 891 F.2d 807 (11th Cir.1989), Judge King offered a thorough analysis on the issue:
In order for the just-desserts theory to be fulfilled, a defendant must appreciate the connection between his crime and punishment. An essential part of the punishment society imposes on a defendant is to make the defendant realize and live with the concept that he will die for what he did. In many respects, the execution of a prisoner who does not have this appreciation is a lesser punishment than society intended to give. Accordingly, if retribution is to be served by the death of a condemned prisoner, the prisoner must at least have this realization. Under the previous analysis, therefore, if a prisoner does not have this realization, and the state executes him, the eighth amendment is violated.
. . . .
If [the retributive and deterrence] purposes behind the death penalty are to be served, and, therefore, the sentence is to be carried out in accordance with the eighth amendment, the defendant must at least appreciate the connection between his crime and punishment. This appreciation consists of both a subjective and objective part. The subjective part is nothing more than the defendant's perception of the connection between his crime and punishment. A defendant must understand the fact he committed his crime and the fact that he will die at a specific time and place. A defendant must also understand the basic and fundamental logical proposition that because he has committed an act that society and all civilized humanity finds heinous he is to be killed. The objective aspect of this realization test is relatively straightforward. This concept determines whether the defendant's subjective understanding is grounded in reality; that is, is rational.

[Note 20:] At first, this concept may appear more psychological than philosophical, but that is not the case. This objective determination is fairly cut and dry. A court must determine whether *143 the defendant's logic behind this connection is reasonable; that is, whether the defendant's rationale is consistent with the ordinary experience of human beings. In essence, a judge must sit as a jury would in a negligence action to determine whether the defendant's understanding is rational. As the court analysis indicates infra, a similar requirement exists in the Dusky context. [End of note 20.]
This appreciation of the connection between crime and punishment is very similar to Justice Powell's "perceives the connection" requirement. The terms "perception" and "appreciation" necessarily imply a similar understanding. Moreover, while appreciation and perception are inherently subjective terms, when an individual perceives or appreciates a cognitive connection between two factual concepts, a small objective understanding develops.
Id. at 1569-70 (emphasis added) (footnote omitted). As pointed out by Judge King, in order for the retributive purpose of the death penalty to be served, the defendant "must realize and live with the concept that he will die for what he did." Id. at 1569. If a defendant does not have this realization, and that defendant is executed, the Eighth Amendment is violated. See id. This is similar to the articulation of the standard by the Mississippi Supreme Court that the defendant "must perceive the connection between his crime and his punishment." Billiot v. State, 655 So.2d at 16 (quoting Ford v. Wainwright, 477 U.S. at 422, 106 S.Ct. 2595 (Powell, J., concurring)).
It is impossible to conclude in this case that Provenzano has a rational understanding of the reason he is to be executed when we have a judicial finding based upon clear and convincing evidence that Provenzano genuinely believes as a matter of fact that he "really will be executed because he is Jesus Christ." Due to Judge Bentley's finding of fact that Provenzano believes that he will be executed because he is Jesus, Provenzano has met his burden under rule 3.812 to establish that he is incompetent to be executed; Provenzano does not rationally understand the reason the death penalty is being imposed upon him. Indeed, under the trial court's findings, should he be put to death he will go to his death believing he is being killed because he is Jesus Christ.
SHAW, J., concurs.
NOTES
[1] Regardless of the outcome of these proceedings it is apparent that the proceedings conducted by Judge Bentley, including the preparation of the order announcing and explaining his decision, were conducted under the highest standards of judicial review.
[2] American Bar Association Criminal Justice Mental Health Standard 7.5-6 (1989) provides:

(a) Convicts who have been sentenced to death should not be executed if they are currently mentally incompetent. If it is determined that the condemned convict is currently mentally incompetent, execution should be stayed.
(b) A convict is incompetent to be executed if, as a result of mental illness or mental retardation, the convict cannot understand the nature of the pending proceedings, what he or she was tried for, the reason for the punishment, or the nature of the punishment. A convict is also incompetent if, as a result of mental illness or mental retardation, the convict lacks sufficient capacity to recognize or understand any fact which might exist which would make the punishment unjust or unlawful, or lacks the ability to convey such information to counsel or the court.
(Emphasis supplied.)