804 So.2d 1218 (2001)
Terrell M. JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. SC96333.
Supreme Court of Florida.
October 25, 2001.
Rehearing Denied December 31, 2001.
*1220 Neal Dupree, Capital Collateral Regional Counsel, and William M. Hennis, III, Assistant CCRC-South, Office of the Capital Collateral Regional CounselSouth, Fort Lauderdale, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Terrell M. Johnson appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
Johnson was convicted of first-degree murder for the shooting death of an Orange County bar owner and of second-degree murder for the shooting of a bar customer during the same incident in 1979. The pertinent facts of the crime are described in detail in this Court's opinion on Johnson's direct appeal. See Johnson v. State, 442 So.2d 193 (Fla.1983). The decision was first appealed to this Court in 1980, but when the transcript of the proceedings was discovered to be incomprehensible we relinquished jurisdiction to the circuit court in order to reconstruct the record and to hold an evidentiary hearing as to the accuracy of the reconstructed record. The supplemental transcript was submitted to this Court, and was examined on direct appeal. On appeal, we affirmed both the conviction and the sentence. See id.
Johnson originally filed a motion for postconviction relief in June 1985. Pursuant to a legislative act passed in June 1985, the circuit court appointed the Office of the Capital Collateral Representative (CCR) to represent Johnson and ordered *1221 CCR to re-plead all of the issues in Johnson's 3.850 motion. CCR refiled Johnson's motion for postconviction relief with the trial court in October 1986. An evidentiary hearing was held in December 1986 and the trial court denied the motion in June 1989. On appeal, this Court affirmed the denial of relief. See Johnson v. State, 593 So.2d 206 (Fla.1992).
In January 1995, Johnson filed a petition for a writ of habeas corpus with this Court and filed a supplemental habeas petition in February. This Court found the twenty-three issues raised in Johnson's habeas petition either to be procedurally barred because they had been raised and rejected on direct appeal or in his previous 3.850 proceeding or to be meritless. See Johnson v. Singletary, 695 So.2d 263 (Fla.1996).
In February 1997, Johnson filed a second 3.850 motion with the circuit court, alleging newly discovered evidence and evidence of a previously unknown Brady[1] violation. The circuit court tolled the time limits in rules 3.851 and 3.852 to permit Johnson to pursue his public records requests. A status hearing was held on December 28, 1998, and Johnson filed his consolidated motion on January 28, 1999. A Huff[2] hearing was held on May 3, 1999, and the circuit court entered an order on June 15, 1999, denying Johnson all relief without an evidentiary hearing.
Johnson appeals that summary denial to this Court and raises five issues. Johnson claims that (1) summary denial was improper; (2) he was denied access to public records relating to the jurors; (3) he was denied effective assistance of counsel because his postconviction attorneys were prohibited by rule from interviewing the jurors to determine if constitutional error occurred; (4) the method of execution in Florida is unconstitutional; and (5) he is incompetent to be executed.
In his first issue on appeal, Johnson claims that he was entitled to an evidentiary hearing on his claims of: (1) ineffective assistance of counsel; (2) newly discovered evidence; and (3) several Brady violations. These claims relate to the following evidence, some of which was recently provided to Johnson by Orange County law enforcement officers after a public records request: a copy of a Miranda[3] card showing that at 12:05 a.m. on January 6, 1980, Johnson refused to sign the card; previously illegible handwritten police notes indicating that at one time the police suspected the involvement of a second individual in the murders; a statement by the girlfriend of the customer victim that he was the type of person who would resist a robbery attempt; and Johnson's good conduct on death row for nearly twenty years.
The time limit for filing postconviction motions in capital cases does not apply where "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R.Crim. P. 3.850(b)(1) (emphasis added). The trial court concluded that the copy of the Miranda card indicating Johnson's refusal to sign it approximately two hours after he was arrested could not constitute newly discovered evidence for two reasons. First, Johnson *1222 was present when he refused to sign the card and was personally aware of his initial refusal and all the circumstances surrounding his interrogation. Second, a letter from the state attorney to Johnson's trial counsel specifies that a Miranda card was one of the items turned over to defense during discovery.
Johnson contends that his condition during the interrogation (undergoing forced detoxification after his arrest) belies the trial court's conclusion that he was personally aware of his initial refusal and all the circumstances surrounding his interrogation. During the original motion to suppress hearing, one of the police officers testified that Johnson was "very tired, redeyed, extremely nervous" with "wrinkled and unkempt clothing" and "messed up" hair. However, the same officer also testified that Johnson did not appear to be under the influence of intoxicating substances and that he appeared to understand everything that was occurring. Johnson also cites medical testimony from his previous 3.850 hearing as to the physical and mental effects of forced detoxification. While the trial court concluded that the reference to a Miranda card in the state attorney's letter regarding items turned over to the defense during discovery also proves that the refusal was known to Johnson, there were at least seven or eight Miranda cards involved in this case according to police officers who testified at the original suppression hearing.
However, whether Johnson or his attorney had knowledge about the refusal to sign the card is only one prong that must be satisfied in order to grant relief on a claim of newly discovered evidence. The evidence must also be "of such nature that it would probably produce an acquittal on retrial." Jones v. State, 709 So.2d 512, 521 (Fla.1998). Even assuming that all questioning should have stopped after Johnson refused to sign the Miranda card in question and his subsequent statements should not have been admitted, Johnson voluntarily and spontaneously made inculpatory statements to an officer one month later while being transported for a psychiatric examination. These statements were admissible and the refusal to sign the card has no bearing on them. Thus, the trial court correctly concluded that the refusal to sign the card would not produce an acquittal on retrial and no relief was warranted on this claim.
Johnson further argues that the refusal to sign the card was Brady material and that his personal knowledge had no bearing on the State's obligation to present the card to the defense. A defendant must demonstrate the following elements before a Brady violation has been proven: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence has been suppressed by the State, either wilfully or inadvertently; and (3) the defendant has been prejudiced by the suppression of this evidence. See Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Way v. State, 760 So.2d 903, 910 (Fla.2000); Thompson v. State, 759 So.2d 650, 662 (Fla.2000). Under this standard, Johnson could not prevail on the Brady claim for the same reason discussed above: his voluntary inculpatory statements, which had no connection with the alleged Brady claim, were properly admitted; and thus Johnson was not prejudiced by the suppression of the refusal to sign the card. Thus, the trial court properly denied relief on this claim.
Although Johnson's trial counsel was provided a copy of police notes regarding the murders, Johnson claims that the notes were illegible. Thus, he contends, he was unaware that the police originally *1223 investigated the possibility of a cosuspect based on a witness report that two white males left the bar after the shooting. However, Johnson's counsel was also provided a copy of the police complaint report during discovery, as evidenced by the state attorney's letter regarding discovery materials. This report clearly states that a named witness saw "two W/M drive away from the tavern." Thus, any police investigation of a co-suspect is not newly discovered evidence nor is it withheld Brady evidence. Furthermore, the fact that the police might have investigated the possibility of a co-suspect does not establish a reasonable probability that the outcome would be different had Johnson presented this information at trial and cannot satisfy either the Brady or Jones standards. Thus, the trial court correctly denied relief without a hearing on this claim.
Johnson also claims that the police withheld exculpatory character evidence regarding the customer victim. According to the victim's girlfriend, he was the type of person who would have resisted the robbery attempt. Under section 90.404(1)(b), Florida Statutes (2000), evidence of a pertinent trait of character of the victim of the crime may be offered by the accused. While this evidence might have been admissible if known to Johnson at the time of trial, it would not "probably produce an acquittal on retrial," nor have any effect on Johnson's death sentence. Johnson was convicted of second-degree murder for shooting the customer, even though he could have been convicted of first-degree felony murder under his version of the events, i.e., he shot the victims after the customer lunged at him during the attempted robbery. Even if the jury had heard this character evidence explaining the victim's behavior during the attempted robbery, it would not "probably produce acquittal" of second-degree murder on retrial. At most, this character evidence would present additional support for the second-degree conviction. Further, Johnson's death sentence was not imposed for the customer's second-degree murder but for the first-degree murder of the bar owner. Thus, the character evidence had no bearing on the jury's penalty phase deliberations. Accordingly, the trial court properly denied relief on this claim as the evidence would not affect either Johnson's conviction or his death sentence.
Finally, Johnson claims that he was entitled to an evidentiary hearing on his claim that his record of good conduct as a death row inmate for nearly twenty years constitutes a mitigating circumstance. This information was not available at the time of Johnson's trial and thus was not available as mitigation evidence then. While evidence of Johnson's adjustment to confinement would be relevant mitigation evidence in a new sentencing proceeding, see Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), it has no bearing on his trial counsel's effectiveness or any other issue cognizable in this postconviction proceeding. Thus, the trial court properly denied relief on this claim.
Issues two and three both relate to juror information. Johnson claims that he was denied public records regarding the jurors (issue two) and that he was denied effective assistance of counsel because rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar precluded postconviction counsel from interviewing the jurors to determine whether constitutional error occurred (issue three).
We consider Johnson's public records claim first. In 1998, this Court amended Florida Rule of Criminal Procedure 3.852, relating to public records requests in capital proceedings. The amended rule, which became effective on October 1, 1998, provides that a capital defendant who was *1224 represented by collateral counsel and had already initiated the public records process had ninety days to serve a written demand for additional public records not previously requested. At a status hearing on December 28, 1998, Johnson's CCR counsel represented to the court that "I believe we're done with the public records, my understanding from talking to the prior attorney on this case."[4] Based upon this representation, the trial court granted Johnson thirty days to file a consolidated 3.850 motion and set the Huff hearing for May 3, 1999. However, on December 31, 1998, CCR counsel in Miami filed requests for public records in all cases subject to the ninety-day limitation of amended rule 3.852. This included three public requests in Johnson's case relating to juror information, which were filed only three days after the status hearing. In his 3.850 motion below, Johnson notified the court that these requests were still pending and that the matter had not been resolved. On appeal, Johnson states that he needs these documents to preserve his rights regarding any irregularities in the jurors' backgrounds and that there was inadequate time to properly compel the production of the public records during the thirty days allotted for the filing of his amended 3.850 motion. Apparently, Johnson is claiming that the trial court should have refrained from ruling on his 3.850 motion until he obtained the juror information requested.
The trial court denied relief on this claim because it determined that Johnson's claim of not being able to access this information was attributable to his own late-filed request. The trial court further noted that rule 3.850 is not the proper vehicle to compel the production of these records and that Johnson should have brought these allegations in a motion to compel production of the records or filed a motion to continue his rule 3.850 filing in order to resolve the public records issue before his motion was due. Moreover, the court noted, there is nothing in Johnson's motion to explain why he could not have requested these records at an earlier date.
In Buenoano v. State, 708 So.2d 941 (Fla.1998), the defendant argued that the trial court should have addressed her public records request prior to denying her third 3.850 motion. This Court concluded that Buenoano was precluded from asserting this claim because she alleged no reasons why she could not have made these requests within the time limits of rule 3.850. See id. at 943. Here, Johnson has not asserted any reason why he could not have requested these juror background records before he filed his first 3.850 motion, nor has he asserted any specific juror misconduct that has been disclosed since his first 3.850 motion was denied. He appears to be seeking general juror information in order to "research and discover" possible irregularities in the jurors' backgrounds. Accordingly, we find that the trial court properly denied relief on this claim.
In issue three Johnson asserts that rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar conflicts with his constitutional rights to a fair trial and effective assistance of counsel. Rule 4-3.5(d)(4) prohibits a lawyer from initiating communication with any juror regarding a trial with which the lawyer is connected, except to determine whether the verdict may be subject to legal challenge. The rule provides that the lawyer "may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist." Id. Before conducting such an interview, the lawyer must *1225 file a notice of intention to interview setting forth the names of the jurors to be interviewed and deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview.
Johnson claims that this rule impermissibly prevented his attorney from investigating possible juror misconduct. The trial court denied relief on this claim on several grounds, finding that (1) Johnson has no right to effective assistance of postconviction counsel; (2) even if the rule is unconstitutional, Johnson would not be entitled to question the jurors absent some cause to believe that juror misconduct had occurred, which Johnson did not show; and (3) the claim was untimely and procedurally barred as it could have been raised before and in fact was raised to some degree in Johnson's first postconviction motion.
As explained by this Court in Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97, 100 (Fla.1991), juror interviews are not permissible unless the moving party has made sworn allegations that, if true, would require the court to order a new trial because the alleged error was so fundamental and prejudicial as to vitiate the entire proceedings. This standard was formulated "in light of the strong public policy against allowing litigants either to harass jurors or to upset a verdict by attempting to ascertain some improper motive underlying it." Id.
In Arbelaez v. State, 775 So.2d 909 (Fla.2000), this Court concluded that no evidentiary hearing was required on a claim of juror misconduct which amounted to a complaint "about a defendant's inability to conduct `fishing expedition' interviews with the jurors after a guilty verdict is returned." Id. at 920. We find Johnson's claim involves such a "fishing expedition." During his first postconviction motion proceedings, Johnson was permitted to interview the jury foreman. On appeal, this Court ruled that the foreman's testimony was inadmissible because it inhered in the verdict and related to jury deliberations. See Johnson, 593 So.2d at 210. Thus, the trial court properly denied this claim without an evidentiary hearing because it is without merit and procedurally barred.
In his fourth issue on appeal, Johnson claims that Florida's method of execution is unconstitutional. This Court has repeatedly rejected claims that electrocution is unconstitutional. See, e.g., Provenzano v. Moore, 744 So.2d 413 (Fla.1999), cert. denied, 528 U.S. 1182, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000); Jones v. State, 701 So.2d 76, 79 (Fla.1997); Medina v. State, 690 So.2d 1241, 1244 (Fla.1997). Johnson also seeks leave to amend this claim in light of the recent amendment of Florida's death penalty statute to permit an inmate to choose between electrocution and lethal injection. See §§ 922.10, 922.105, Fla. Stat. (2000). However, this Court has also rejected claims that lethal injection is unconstitutional and that the application of the amended statute violates the ex post facto clause. See Provenzano v. State, 760 So.2d 137 (Fla.) (finding that lethal injection is not unconstitutional method of execution), cert. denied, 530 U.S. 1255, 120 S.Ct. 2709, 147 L.Ed.2d 978 (2000); Bryan v. State, 753 So.2d 1244 (Fla.) (same), cert. denied, 528 U.S. 1185, 120 S.Ct. 1236, 145 L.Ed.2d 1132 (2000); Sims v. State, 754 So.2d 657 (Fla.) (finding no ex post facto violation), cert. denied, 528 U.S. 1183, 120 S.Ct. 1233, 145 L.Ed.2d 1122 (2000).
In his final claim, Johnson argues that he is not competent to be executed. However, Johnson alleges no facts in support of this allegation, nor did he offer any support of this claim at the trial court. In fact, he even concedes that this claim is not ripe for consideration at this time. *1226 Thus, the trial court properly denied this claim as being without merit.
Accordingly, we find no error in the trial court's summary denial of Johnson's rule 3.850 motion for postconviction relief and affirm the order below.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] Huff v. State, 622 So.2d 982 (Fla.1993). The Huff hearing requirement was incorporated in Florida Rule of Criminal Procedure 3.851(c). Under this rule, a trial court must conduct a hearing to determine whether an evidentiary hearing is required before ruling on any rule 3.850 motion filed by a death-sentenced prisoner.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Counsel representing Johnson at the 1998 status hearing had recently been assigned to the case after Johnson's previous postconviction attorney left CCR.