886 So.2d 952 (2004)
Robert Beeler POWER, Appellant,
v.
STATE of Florida, Appellee.
Robert Beeler Power, Petitioner,
v.
James V. Crosby, Jr., etc., Respondents.
Nos. SC02-874, SC03-28.
Supreme Court of Florida.
May 6, 2004.
Rehearing Denied as July 8, 2004.
*955 Pamela H. Izakowitz, Capital Collateral Regional Counsel  South, Tampa, FL; and Rachel L. Day, Assistant CCRC, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
Rehearing Denied as to SC02-874 July 8, 2004.
PER CURIAM.
Robert Beeler Power, Jr., an inmate under the sentence of death, appeals an order of the circuit court denying a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.851 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons discussed below, we affirm the trial court's denial of post-conviction relief, and we deny Power's petition for writ of habeas corpus.

FACTUAL BACKGROUND
Robert Beeler Power was convicted of first-degree murder for the 1992 murder of twelve-year-old Angeli Bare.[1] At the conclusion of the guilt phase proceedings, there was a five-month delay prior to the beginning of the penalty phase, following which the jury unanimously issued a recommendation of death. Upon a finding of four aggravating factors and no mitigating factors, the trial court accepted the jury's recommendation and sentenced Power to death.[2] On direct appeal, this Court affirmed Power's conviction and sentence, although we did overturn the trial court's finding that the murder was cold, calculated and premeditated (CCP). See Power, 605 So.2d at 864.
In November 1998, Power filed a motion to vacate judgment of conviction and sentence, in which he raised thirty-eight claims. A Huff[3] hearing was held pursuant to Power's motion, and the trial court directed an evidentiary hearing on several of Power's claims. Twenty-five witnesses testified at the evidentiary hearing, following which the trial court denied Power's motion for post-conviction relief in its entirety. Power now appeals the denial of post-conviction relief to this Court, and also petitions this Court for a writ of habeas corpus.

CLAIMS SUMMARILY DENIED
In this appeal, Power challenges the trial court's summary denial of several claims *956 which he argues warranted an evidentiary hearing. This Court has explained that "a defendant is entitled to an evidentiary hearing on a post-conviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient." Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). We address each of Power's claims in turn.

Constitutional Errors
The trial court summarily denied Power's claims that trial counsel was ineffective for failing to object to what he contends were constitutional errors. Power asserts the following: (1) the instruction given to the jury on the HAC aggravator was unconstitutional; (2) the burden of proof was improperly shifted to Power during the penalty phase; and (3) the finding of the prior violent felony aggravator and offense committed during the commission of an enumerated felony aggravator rendered him automatically eligible for the death penalty. We conclude that the trial court properly denied this claim, as each of the individual assertions fail for being procedurally barred or for being without legal merit. See Freeman v. State, 761 So.2d 1055 (Fla.2000); Blanco v. State, 706 So.2d 7, 11 (Fla.1997); Johnson v. State, 660 So.2d 637, 647-48 (Fla.1995).

Nonstatutory Aggravating Circumstances
Power also contends that the trial court erroneously denied his claim that trial counsel was ineffective for failing to object to a prosecutorial comment which he claims amounted to the establishment of nonstatutory aggravating circumstances. This claim stems from the prosecutor's statement made during argument of the HAC aggravator: "Angeli didn't survive to tell us what happened, but when we listened to the stories of Ms. Wallace, when we listened to the testimony of the Warden children, we realized that he takes pleasure in inflicting pain." The trial court found that this claim was procedurally barred because Power appealed the sufficiency of the HAC aggravator on direct appeal; the trial court also found that trial counsel was not ineffective under the circumstances where he also kept evidence and testimony of Power's prior crimes, including victim impact evidence, away from the jury; successfully argued a motion challenging the constitutionality of section 921.143, Florida Statutes; and challenged the HAC instruction at the charge conference, even objecting again after the instruction was given. We agree with the trial court's conclusion that this claim fails on its face in setting out a valid claim of counsel's ineffectiveness considering the content of the entire statement at issue.

Improper Prosecutorial Comments
Power also contends that during the guilt and penalty phases, trial counsel rendered ineffective assistance when he failed to object to other comments made by the prosecution. We have no problem with the trial court's summary denial of this claim. The trial court first found that this claim was procedurally barred where it was raised and rejected on direct appeal. See Power, 605 So.2d at 861 ("We reject Power's next contention that the prosecutor improperly commented on Power's failure to testify in violation of his constitutional right against self-incrimination. The error, if any, under the circumstances of this case, was harmless.").
We also agree with the trial court's conclusion on the merits that trial counsel was not deficient with respect to this claim, inasmuch as trial counsel did object to certain statements, and even moved for a mistrial, albeit unsuccessfully, on the *957 grounds of other improper prosecutorial comments.

Flight Instruction
Next, Power contends that trial counsel was ineffective for allowing an improper instruction on flight. We agree with the trial court's summary denial of this claim as procedurally barred. This issue was addressed on direct appeal where this Court held that the use of the flight instruction constituted harmless error. See Power, 605 So.2d at 861. In addition, as the trial court pointed out in its order denying post-conviction relief, counsel actually objected to the instruction several times.

Juror Interviews
Power also argues that the trial court erred in refusing to authorize him to interview jurors to discover possible juror prejudices, and that rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar[4] violates the state and federal Constitutions and his right of access to the courts under article I, section 21 of the Florida Constitution. First, "juror interviews are not permissible unless the moving party has made sworn allegations that, if true, would require the court to order a new trial because the alleged error was so fundamental and prejudicial as to vitiate the entire proceedings." Johnson v. State, 804 So.2d 1218, 1224 (Fla.2001) (citing Baptist Hosp. of Miami, Inc. v. Maler, 579 So.2d 97, 100 (Fla.1991)). Power's allegations do not satisfy this standard. Further, this claim is procedurally barred because it could have been raised on direct appeal.
We also reject Power's constitutional challenges to rule 4-3.5(d)(4). This Court has previously rejected similar constitutional challenges to this rule. See Johnson v. State, 804 So.2d 1218, 1224 (Fla.2001) (rejecting contention that rule 4-3.5(d)(4) conflicts with defendant's constitutional rights to a fair trial and effective assistance of counsel); Rose v. State, 774 So.2d 629, 637 n. 12 (Fla.2000) (holding that the claim "attacking the constitutionality of the Florida Bar Rule of Professional Conduct governing interviews of jurors [was] procedurally barred because Rose could have raised this issue on direct appeal"). As a result, the trial court properly summarily denied this claim.

Statutory and Nonstatutory Mitigation
Power argues that the trial court erroneously failed to find statutory and nonstatutory mitigation on his behalf. However, a claim that a trial court erred by failing to consider mitigating evidence must be presented on direct appeal. See Rivera v. State, 717 So.2d 477, 480 (Fla.1998); Cherry v. State, 659 So.2d 1069, 1071 (Fla.1995). Post-conviction proceedings are no substitute for appeals.

*958 Scrivener's Errors

Power also argues that numerous scrivener's errors and unrecorded sidebars violated his right to effective appellate review. We reject this claim as procedurally barred because Power actually raised this claim on direct appeal and it was rejected. On direct appeal, this Court said: "Lastly, we reject as meritless Power's claims that (1) he was denied effective assistance of counsel and a full appellate review due to inaccuracies in the trial transcript...." Power, 605 So.2d at 864.

Death Penalty Challenges
Lastly, Power contends that Florida's death penalty unconstitutionally permits cruel and unusual punishment, and that he is insane to be executed. This Court has previously rejected similar claims regarding the constitutionality of Florida's death penalty. See Provenzano v. State, 761 So.2d 1097, 1099 (Fla.2000) (holding execution by lethal injection does not constitute cruel punishment or unusual punishment or both); Provenzano v. Moore, 744 So.2d 413, 416 (Fla.1999) (holding execution by electrocution in Florida's electric chair does not constitute cruel or unusual punishment). Furthermore, we reject as premature Power's claim that he is insane to be executed. As he acknowledges, this claim is not yet ripe and therefore, merits no relief from this Court.

EVIDENTIARY HEARING
As to those claims considered at Power's evidentiary hearing, he challenges the denial of claims relating to: (1) Power being shackled at trial; (2) the sentencing order in Power's case; and (3) trial counsel's investigation and preparation and Power's waiver of mitigating evidence.
The framework for analyzing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052. Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Therefore, this Court must engage in an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings.

Shackling
Power argues that he was improperly shackled during his trial and that, combined with the security presence in the courtroom, the shackling caused extreme prejudice, which warrants a new trial. Power asserts that trial counsel's failure to object to his being shackled constituted ineffective assistance of counsel.
"It is well established that the decision to restrain a criminal defendant in the presence of the jury is subject to very close judicial scrutiny." Sireci v. Moore, 825 So.2d 882, 887 (Fla.2002). In this case however, we defer to the trial court's finding that Power was not shackled during *959 trial. There was testimony at the evidentiary hearing from witnesses that Power was not shackled. These witnesses included the head bailiff and the court reporter, who were present throughout the trial and were in a position to observe if Power was indeed shackled. As a result, the trial court, as a fact-finder, was entitled to conclude that Power was not shackled. Therefore, trial counsel could not have been ineffective for failing to object to an event which the trial court has concluded did not occur.

Sentencing Order
Power also contends that the State played an improper role in drafting his sentencing order by participating in an ex parte communication with the trial judge. However, we find that competent, substantial evidence supports the trial court's conclusion that no such impropriety occurred.
A number of witnesses, including state attorneys and court staff who took part in the trial, testified that no ex parte contact was had with the trial judge, and the trial court determined that the evidence presented at the evidentiary hearing refuted Power's assertions. Further, trial counsel cannot be deemed ineffective for failing to raise an issue that, as illustrated in the evidentiary hearing testimony, is clearly unsupported by the record. The trial court was "in a superior position `to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses.'" Stephens v. State, 748 So.2d at 1034 (quoting Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976)). Accordingly, we affirm the trial court's rejection of this claim.

Mitigating Evidence
Finally, we consider Power's claim regarding the treatment of mitigation evidence. The substance of this claim falls into two categories: (1) adequacy of trial counsel's penalty phase preparation and investigation, and (2) adequacy of Power's waiver of mitigation.

Preparation and investigation
Power alleges that trial counsel was ineffective for failing to utilize a wealth of mitigating evidence, including aspects of his personal and family life which could have been presented via expert psychiatric evidence and the testimony of family members. With respect to testimony from family members, it is well settled that evidence of family background and personal history may be considered in mitigation. See Stevens v. State, 552 So.2d 1082, 1086 (Fla.1989).
At the evidentiary hearing, Power presented six family witnesses, all of whom stated that they were not contacted by the defense, and would have testified on Power's behalf if asked to do so. The record also reflects, however, that due to prior experience representing Power, trial counsel was aware of Power's difficult background.
At the evidentiary hearing, Power presented substantial mitigation evidence, based on various records, the testimony of family members, and the testimony of mental health experts. At issue is whether trial counsel's alleged failure to fully develop and present this evidence, under the facts of this case, was reasonable. In this case, the guilt phase ended on June 3, 1990, and as early as July 12, 1990, trial counsel and Power participated in an in camera hearing with the trial court during which Power clearly stated that he was against the presentation of mitigation evidence revolving around his personal life. Additionally, trial counsel and Power participated in a second in camera hearing before the court on October 11, 1990, just a few weeks prior to the penalty phase. *960 At that time, trial counsel renewed his concerns with Power's decision and those concerns were echoed by the court. However, Power stated on the record that against the advice of counsel, he did not wish to present this aspect of mitigation. At the penalty phase, trial counsel stated again, on the record, that Power would not allow him to present certain testimony in mitigation. It is noteworthy that Power did not waive the presentation of all mitigation evidence, but only that evidence which related to his personal background and family life, and evidence that he believed would suggest that he was conceding guilt for Bare's murder.[5]
"In evaluating the competence of counsel, we must examine the actual performance of counsel in preparation for and during the penalty phase proceedings, as well as the reasons advanced therefor." Rose v. State, 675 So.2d 567, 572 (Fla.1996). In Rose, trial counsel's deficient performance deprived Rose of a reliable penalty phase proceeding where counsel was "unfamiliar with the concept of aggravating and mitigating factors," and failed to obtain records relevant to Rose's mental problems. Id. at 572.
In Power's case, nothing in the record questions trial counsel's competence in terms of understanding the principles of aggravating and mitigating factors. Indeed, the fact that trial counsel sought an in camera hearing only weeks into the penalty phase preparation due to his concern about the direction that the development of mitigation was taking suggests that trial counsel clearly understood the dangers inherent in not presenting potentially effective mitigation. Trial counsel was aware of potentially helpful mitigation, and did obtain and review relevant records. In fact, the record reflects that trial counsel spent in excess of two hundred hours preparing for the penalty phase. Additionally, substantially distinguishing Power's case, nowhere in Rose is there any recorded documentation of the defendant's waiver of mitigation.
In Rutherford v. State, 727 So.2d 216 (Fla.1998), this Court affirmed the trial court's denial of post-conviction relief where Rutherford claimed that counsel failed to properly investigate and present mitigating evidence. Like Power, Rutherford also interfered with trial counsel's conduct by placing limitations on what could and could not be presented during the penalty phase. This Court found Rutherford's uncooperativeness a critical factor:
We find no error in the trial court's determination that Rutherford's lack of cooperation was a hindrance to presenting additional mitigation evidence regarding his military background. Trial counsel testified to himself having a military background and being otherwise familiar with how to effectively use military decorations in mitigation, but that "Rutherford did not want me to use any military background or record, and would not discuss Vietnam service or his Marine Corps service in general" until he unexpectedly did so on the stand during the penalty phase. Trial counsel similarly testified that Rutherford discouraged his parents from talking to or *961 cooperating with trial counsel. As found by the trial court, Rutherford's uncooperativeness at trial belies his present claim that his trial counsel was deficient for not investigating and presenting mitigation regarding his harsh childhood and military history.
Id. at 225. These factors are extremely similar to this case, in which Power refused to allow trial counsel to present evidence pertaining to his personal background and family life, and like Rutherford, even encouraged his mother not to testify. Power admitted his interference with trial counsel's investigation at the October 11, 1990, in camera hearing, at which the following exchange occurred:
Trial counsel: To be frank, I have talked to all of them. In fact, Mr. Power's mother talked to me at length, before this case came up, in the previous case. So that's why I was keenly interested in the information. And I can understand why he feels the way he feels. And I think it is a matter of judgment and a matter of, of, of tactics, to some extent. I think it would be helpful. And I've said that all along and he knows that. But he knows what  why I think it would be helpful and we have gone over it at length and I've talked to his mother at length. She won't talk to me anymore about it and, and to my investigator. But the one time he contacted her, she said she will deny ever having told me what she told me. And that's her privilege at this point.
The Defendant: That was at my request because I informed her that I didn't want to present them as witnesses and asked her not to speak any further about things regarding my case or my past.
As in Rutherford, where there is proof that counsel spent substantial effort on the case and was familiar with the mitigation, but also evidence that Power himself interfered with trial counsel's ability to obtain and present mitigating evidence, this Court will not overrule a trial court's conclusion that counsel's performance was not deficient.[6]

Adequacy of Power's waiver
It is well settled that a defendant's waiver of mitigation must be knowingly, intelligently, and voluntarily made. See State v. Lewis, 838 So.2d 1102, 1112 (Fla.2002). Power asserts that trial counsel's failure to evaluate Power for competency to waive mitigation constituted ineffective assistance of counsel. He contends that an evaluation either prior to trial or during the penalty preparation phase would have produced sufficient concerns that Power was incompetent to make a knowing and intelligent waiver of mitigation. The question is, however, whether a reasonable attorney, at the time, would have proceeded in such a manner. "[T]he proper standard for attorney performance is that of reasonably effective assistance." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
In this case, trial counsel testified that he got along with Power, that Power actively participated in his defense, that he appeared alert and oriented, and therefore counsel had no reason to detect any competency issues. Counsel testified at the evidentiary hearing that he was convinced that Power's insistence on avoiding the mitigation evidence in question was *962 the product of Power's own beliefs and stubbornness, not the product of any mental health problems. Additionally, there is no indication that the trial court itself doubted Power's competency to waive mitigation; rather, the record reflects the contrary. Therefore, where the circumstances indicate a reasonable attorney would not have surmised a need for a competency determination in this case, we conclude that trial counsel's failure to have Power examined for competency did not constitute deficient performance.
The facts in Power's case are distinguishable from the facts in this Court's recent decision in State v. Lewis, 838 So.2d 1102 (Fla.2002), in which this Court held, despite an alleged waiver from the defendant, that trial counsel's performance was deficient due to his failure to attempt to discover mitigation in Lewis's records or from Lewis's family members. See Lewis, 838 So.2d at 1109. As in the instant case, Lewis instructed counsel not to present mitigating evidence. However, in Lewis, Lewis's attorney delayed commencing the penalty phase investigation, expended little effort to obtain witnesses or review relevant records, and spent less than eighteen hours total in preparation for the penalty phase. Id. As a result, trial counsel's failure to research potential mitigation resulted in a determination that Lewis's ability to make an informed waiver was substantially impacted. Id. Lewis is distinguishable from this case, where Power's trial counsel was aware of potential mitigation, discussed the presentation of evidence with Power, and continued to conduct an investigation into Power's background even though Power said that he did not want such information presented. As a result, trial counsel's performance provided Power with the ability to make an informed waiver of mitigation evidence. Power's argument that his waiver was inadequate is undermined by the detailed nature of the discussions on the record at the in camera hearings, which reflect an aware and involved defendant.
In sum, the record supports the trial court's conclusion that counsel conducted a reasonable investigation under the circumstances, and was perfectly poised to proceed with a thorough presentation of mitigating evidence including Power's background, if Power had allowed him to do so. It appears the omission from the penalty phase of the wealth of mitigation presented at the evidentiary hearing was the result of compliance with a competent client's demands  not ineffectiveness on trial counsel's part.

Cumulative Errors
In the last of Power's rule 3.851 claims, he contends that the cumulative effect of the errors raised in his motion for post-conviction relief forms a basis for relief in this case. In light of the failure of each of Power's individual claims, Power's cumulative error claim fails as well. See Bryan v. State, 748 So.2d 1003, 1008 (Fla.1999) (concluding that the defendant's cumulative effect claim was properly denied relief where individual allegations of error were found to be without merit). We affirm the trial court's denial of post-conviction relief.

WRIT OF HABEAS CORPUS
Power's petition for writ of habeas corpus raises three claims: (1) appellate counsel rendered ineffective assistance; (2) this Court conducted an inadequate proportionality review and harmless error analysis; and (3) Florida's capital sentencing statute violates the Sixth and Fourteenth Amendments under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

*963 Ineffectiveness of Appellate Counsel

Power claims that appellate counsel was ineffective for failing to raise improper prosecutorial comments on direct appeal, failing to challenge the introduction of evidence of Power's prior violent felony convictions during the penalty phase, and failing to raise a cumulative error claim on direct appeal.
Claims of ineffective assistance of appellate counsel are appropriately raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, in order to grant habeas relief based on ineffectiveness of counsel, this Court must determine:
[W]hether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981).

Prosecutor's comments
Power asserts that appellate counsel was ineffective for failing to raise on direct appeal improper comments made by the prosecutor during the guilt and penalty phase closing arguments. However, this Court has held that "appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object." Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1997). A timely objection allows the trial court an opportunity to give a curative instruction or admonish counsel for making an improper argument. See Nixon v. State, 572 So.2d 1336, 1341 (Fla.1990). As noted by the State, Power has failed to demonstrate that these alleged errors were preserved by objections in the record.
Where errors are not preserved, in order for Power to obtain relief, he must demonstrate that the prosecutor's comments rose to the level of fundamental error. Fundamental error is the type of error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. See Card v. State, 803 So.2d 613, 622 (Fla.2001); see also McDonald v. State, 743 So.2d 501, 505 (Fla.1999) (quoting Urbin v. State, 714 So.2d 411, 418 (Fla.1998)); Chandler v. State, 702 So.2d 186, 191 n. 5 (Fla.1997). In determining whether fundamental error has occurred, the totality of the circumstances approach applies. See Card, 803 So.2d at 622.
Having reviewed each closing argument in its entirety, we conclude that the prosecutor's remarks do not constitute fundamental error so as to have deprived Power of a fair trial.
We conclude that a sufficient showing has not been made that appellate counsel was ineffective for failing to challenge the prosecutor's comments, and, therefore, this claim is denied.

Prior felony convictions
We conclude that Power's claim that the trial court improperly allowed penalty phase testimony regarding Power's prior violent felony convictions is also *964 without merit. At the penalty phase, four individuals testified as victims as to Power's prior violent felony convictions.
This Court has held that "[d]etails of prior violent felony convictions involving the use or threat of violence to the victim are admissible in the penalty phase of a capital trial." Lockhart v. State, 655 So.2d 69, 72 (Fla.1995). "Such testimony helps determine whether `the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the judge and jury.'" Id. (quoting Elledge v. State, 346 So.2d 998, 1001 (Fla.1977)). We find no abuse of discretion has been demonstrated in the trial court's decision to allow this testimony. To the extent that this testimony helped the jury consider Power's propensity to commit crimes, particularly violent crimes, the challenged testimonies were properly admitted. Therefore, because the claims fail on the merits, appellate counsel's performance did not fall measurably outside the range of professionally acceptable performance, and we therefore deny relief on this claim.

Cumulative error
As noted by the State, Power has not articulated his cumulative error claim in a manner upon which this Court can grant him relief. Power simply refers to the "sheer number and types of errors involved in his trial." As this Court has previously stated: "The purpose of an appellate brief is to present arguments in support of the points on appeal." Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990).
Furthermore, neither the individual claims raised in Power's petition for writ of habeas corpus nor those in his motion for post-conviction relief constitute a basis for relief. Therefore, cumulatively, these claims fail as well. See Porter v. Crosby, 840 So.2d 981 (Fla.2003) (concluding that habeas corpus petitioner's cumulative effect claim was properly denied relief where individual allegations of error were found to be without merit). Thus, this claim is denied.

Proportionality Review/Harmless Error Analysis
Power also contends that this Court conducted a flawed harmless error analysis on direct appeal due to the absence of substantial, compelling mitigation from the Court's consideration. We reject this claim. This Court has said:
We have described the "proportionality review" conducted by this Court in every death case as follows:
Because death is a unique punishment, it is necessary in each case to engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances.
Tillman v. State, 591 So.2d 167, 169 (Fla.1991) (quoting Porter v. State, 564 So.2d 1060, 1064 (Fla.1990)) (alterations in original).
On direct appeal, this Court conducted a proportionality analysis. See Power, 605 So.2d at 864. The fact that this Court struck the CCP aggravator in this case establishes more than a cursory review by this Court. Power now asserts that this Court's review was inadequate due to the absence of Power's personal-life-related mitigation from this Court's consideration on direct appeal. However, a defendant cannot succeed in restricting the use of mitigation evidence at trial and then complain about this Court's lack of consideration of such evidence on direct appeal.

Ring Claim
In Power's third and final habeas claim, Power contends that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi *965 v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We have rejected this claim in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and numerous other cases, and likewise, we deny Power's claim. We note that one of the aggravators found by the trial court was that the murder was committed while Power was engaged in the commission of sexual battery, burglary, and kidnapping. This aggravator was charged by indictment and found unanimously by the jury. See Banks v. State, 842 So.2d 788, 793 (Fla.2003) (noting that habeas relief under Apprendi and Ring was not available where the trial court found as an aggravating factor that the murder was committed during the course of a felony).
Further, we note that Power was previously convicted of several violent felonies including: armed burglary, sexual battery, kidnapping, aggravated assault, aggravated battery, and robbery with a deadly weapon. Under Apprendi and Ring, the finding of the prior violent felony aggravator need not be found by the jury. See Bottoson, 833 So.2d at 723 (Pariente, J., concurring in result only) (explaining that "[i]n extending Apprendi to capital sentencing, the Court in Ring did not eliminate the `prior conviction' exception"). We therefore deny Power's Ring claim and his petition for habeas relief in its entirety.

CONCLUSION
For the reasons discussed above, we affirm the lower court's denial of Power's motion for post-conviction relief and we also deny his petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concurring.
CANTERO, J., concurs specially with an opinion, in which WELLS and BELL, JJ., concur.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
CANTERO, J., concurring.
I concur in the majority opinion. Moreover, regarding Power's claim that Florida's capital sentencing scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I also would hold, for the reasons stated in my specially concurring opinion in Windom v. State, Nos. SC01-2706 & SC02-2142, 886 So.2d 915, 2004 WL 1057640 (Fla. May 6, 2004), that Ring does not apply retroactively.
WELLS and BELL, JJ., concur.
ANSTEAD, C.J., concurring in part and dissenting in part.
I agree with the majority opinion in all respects, except for its discussion of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] The facts in this case are set forth in detail in Power's direct appeal, Power v. State, 605 So.2d 856 (Fla.1992).
[2] The trial court found the following aggravating factors: (1) the defendant was previously convicted of a felony involving the use or threat of violence; (2) the homicide was committed while the defendant was engaged in the commission of the crimes of sexual battery, burglary, and kidnapping; (3) the homicide was especially heinous, atrocious, or cruel (HAC); and (4) the homicide was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar provides:

A lawyer shall not: ...
(4) after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the venire or jurors in the course of official proceedings or as authorized by court rule or written order of the court.
[5] Power did allow the penalty phase testimony of Dr. Michael Radelet, who testified that as a result of Power's prior convictions, he faced ten consecutive life sentences plus 200 years, all of which would be served in a secure Florida facility. Radelet stated that based on an analysis of Florida law, it was certain that Power would not be released from prison. As a result, Radelet testified that Power bore no threat of future dangerousness. Radelet also discussed the cost of execution versus the cost of life imprisonment, and opined that life imprisonment is a substantially cheaper alternative.
[6] We also reject Power's contention that the U.S. Supreme Court's recent decision in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), dictates a determination that trial counsel was ineffective in Power's case. That case did not involve circumstances where the defendant interfered with trial counsel's investigation and presentation of mitigating evidence.