923 So.2d 419 (2005)
Ernest D. SUGGS, Appellant,
v.
STATE of Florida, Appellee.
Ernest D. Suggs, Petitioner,
v.
James V. Crosby, Jr., etc., Respondents.
Nos. SC03-1330, SC04-224.
Supreme Court of Florida.
November 17, 2005.
Rehearing Denied February 22, 2006.
*423 Hilliard E. Moldof, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Ernest D. Suggs, a prisoner under sentence of death, appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Suggs also petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the circuit court's denial of postconviction relief and deny the petition for habeas corpus relief.

I. BACKGROUND
In July 1992, Ernest D. Suggs was convicted of first-degree murder, kidnapping, and robbery. After the jury recommended a death sentence by a seven-to-five vote, the trial court sentenced Suggs to death for the first-degree murder conviction, finding seven aggravating factors[1] and three mitigating factors.[2] On direct appeal, this Court detailed the following facts about the murder and the trial:
The record reflects the following facts regarding this case. Pauline Casey, the victim, worked at the Teddy Bear Bar in Walton County. On the evening of August 6, 1990, the bar was found abandoned, the door to the bar was ajar, cash was missing from the bar, and the victim's car, purse, and keys were found at the bar. The victim was missing. Ray Hamilton, the victim's neighbor, told police that he last saw the victim shooting pool with an unidentified customer when he left the bar earlier that night. Based on Hamilton's description of the customer and the customer's vehicle, police issued a BOLO for the customer. Subsequently, a police officer stopped a vehicle after determining that it matched the BOLO description.
The driver of the vehicle was identified as the appellant, Ernest Suggs. Although *424 he was not then under arrest, Suggs allowed the police to search his vehicle and his home. While searching Suggs' home, the police found, in a bathroom sink, approximately $170 cash in wet bills, consisting of a few twenty-, ten-, and five-dollar bills and fifty-five one-dollar bills.
Meanwhile, police obtained an imprint of the tires on Suggs' vehicle and began looking for similar tire tracks on local dirt roads. Similar tire tracks were found on a dirt road located four to five miles from the Teddy Bear Bar. The tracks turned near a power line, and the victim's body was found about twenty to twenty-five feet from the road. The victim had been stabbed twice in the neck and once in the back; the cause of death was loss of blood caused by these stab wounds. After the victim was found, Suggs was arrested for her murder.
In addition to the cash and tire tracks, police obtained the following evidence connecting Suggs to the murder: one of the three known keys to the bar and a beer glass similar to those used at the bar were found in the bay behind Suggs' home; the victim's palm and fingerprints were found in Suggs' vehicle; and a serologist found a bloodstain on Suggs' shirt that matched the victim's blood. Additionally, after his arrest, Suggs told two cellmates that he killed the victim.
In his defense, Suggs contended that he was framed and made the following claims: that he had small bills because his parents had paid him in cash for working on their dock; that the money was wet because he fell in the water while working on the dock; that other vehicles have tires similar to the tires on his vehicle; that the tires on his vehicle leave a specific overlap pattern because of the wear on them and that no such overlap pattern was found at the scene; that the underbrush on his vehicle did not match any brush from the area of the crime scene; that no fibers or hairs from the victim were found in his vehicle; that the fingerprints in his vehicle could have been left at any time before the day of the murder; that the enzyme from the blood stain on his shirt matches not only the victim but also 90% of the population; that the shirt from which the blood was taken was not properly stored and that the stain could come from any bodily fluid; that the tests performed on the blood stain produced inconclusive results, including the fact that the stain could have been a mixed stain of saliva and hamburger; that a news conference was held regarding his arrest twenty-four hours before the bay behind his house was searched, which provided ample time for someone to deposit the key and glass there; and that his two cellmates lied, gave inconsistent testimony, and received reduced sentences because of their testimony. Additionally, Suggs contended that both Ray Hamilton and Steve Casey, the victim's husband, could have committed the murder (with Casey having life insurance as a motive), and that those individuals were being pursued as suspects until his arrest, but as soon as he was arrested, police dropped their investigation of those suspects.
The State countered this defense by showing that the dock on which Suggs was purportedly working contained no new wood; that the tire tracks did in fact match Suggs' vehicle; and that the enzyme from the blood did not come from Suggs.
Suggs was convicted of first-degree murder, kidnapping, and robbery.
At the penalty-phase proceeding, one of Suggs' cellmates testified that Suggs told him he murdered the victim because he did not want to leave a witness. Additionally, *425 the State entered into evidence a book entitled Deal the First Deadly Blow, which they had taken from Suggs' house. The State used this evidence to show that Suggs planned how he would kill the victim. The State also introduced evidence that Suggs was convicted of first-degree murder and attempted murder in 1979 and that he was on parole at the time of the murder in this case. Suggs produced evidence showing that he came from a good family; that he was a normal, happy child; and that he was a very hard worker.
Suggs v. State, 644 So.2d 64, 65-66 (Fla. 1994).
Suggs appealed his conviction and death sentence to this Court, raising eight issues.[3] This Court rejected these claims and affirmed Suggs' convictions and sentences. 644 So.2d at 70.
On January 24, 1997, Suggs filed a motion for postconviction relief seeking to vacate his conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850. On February 27, 1998, Suggs added new claims by filing an amended motion. On October 22, 1999, the postconviction court held a Huff[4] hearing. The court thereafter issued an order denying some of Suggs' claims, granting an evidentiary hearing on others, and dismissing the rest without prejudice with leave to amend due to insufficient pleadings. State v. Suggs, No. 90-0338-CF (Fla. 1st Cir. Ct. order filed Mar. 17, 2000). On August 28, 2001, Suggs filed a "Second Amended Motion to Vacate Convictions and Sentences." The motion contained twenty-one claims, most of which had been previously raised in the original and first amended motions.
On January 14, 2002, the postconviction court held another Huff hearing to determine which issues would require an evidentiary hearing. Based on arguments heard at the Huff hearing, the court issued an order granting an evidentiary hearing on several claims. State v. Suggs, No. 90-0338-CF (Fla. 1st Cir. Ct. order filed May 17, 2002). After the evidentiary hearing was held on January 23 and January 24, 2003, the postconviction court denied relief on all outstanding claims. State v. Suggs, No. 90-0338-CF (Fla. 1st Cir. Ct. order filed June 12, 2003) (postconviction order).

II. RULE 3.850 APPEAL
The case now comes to this Court on an appeal from the postconviction court's denial of postconviction relief. Suggs raises twenty-eight issues.[5]

*426 A. Giglio and Massiah Claims
To establish a Giglio[6] violation, a petitioner must show that (1) some testimony at trial was false; (2) the prosecutor knew that the testimony was false; and (3) the testimony was material. Craig v. State, 685 So.2d 1224, 1226 (Fla.1996). This Court applies a mixed standard of review to Giglio claims, "defer[ring] to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but review[ing] de novo the application of those facts to the law." Sochor v. State, 883 So.2d 766, 785 (Fla.2004) (quoting Lightbourne v. State, 841 So.2d 431, 437-38 (Fla.2003) (alterations in original)).
Suggs claims that the State committed a Giglio violation by presenting the false and misleading testimony of two inmates who were in the same jail cell with Suggs while he was in the Walton County Jail awaiting trial on the murder charge and other related charges in this case. James Taylor and Wallace Byars testified at trial that Suggs confessed to killing the victim and that they were not promised favors in exchange for their testimony.
The postconviction court denied relief and held the following:
Gerald Shockley, an investigator for prior collateral counsel, testified regarding the results of his investigation into the placement of Wallace Byars and James Taylor in a cell with the Defendant Suggs. According to Mr. Shockley, James Taylor was interviewed at the *427 Houston County Jail in Dothan, Alabama on January 16th, 1996. Although Mr. Taylor stated that he and Byars fabricated the admission by the Defendant to the murder of Pauline Casey because they wanted preferential treatment from the Sheriff's Office, Mr. Taylor refused to testify or provide a written statement regarding this allegation. Thus, no evidence has been presented to support this allegation.
Postconviction Order at 2-3 (footnotes omitted).
Suggs asserts the related claim that his trial counsel was ineffective for failing to raise a violation under Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Suggs contends that his trial counsel should have raised the issue in the trial court that his constitutional right to counsel was violated because the State placed James Taylor and Wallace Byars in his cell in order to obtain incriminating statements. Suggs maintains that counsel should have claimed that Taylor and Byars were State agents.
In Massiah, the United States Supreme Court held that incriminating statements elicited by a government agent outside the presence of counsel cannot be admitted against a defendant at trial. In United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the United States Supreme Court interpreted Massiah to apply when a state places an undercover jailhouse informant in the same cell as a defendant and instructs the informant to be alert to any incriminating statements made by the defendant.
The postconviction court denied Suggs' claim and held that counsel could not be found ineffective because no evidence existed to support a Massiah claim. In particular, the court found:
As to the claim of ineffective assistance of counsel for failure to file motions pursuant to Massiah, there is no credible evidence that either Taylor or Byars were agents for the State. In fact, Quinn McMillan, former Sheriff of Walton County, testified that Taylor and Byars were not instructed to attempt to obtain a confession from the Defendant. Further, as Mr. Kimmel explained during the evidentiary hearing, they did not have any evidence that Taylor and Byars were planted. After taking depositions of both Taylor and Byars "and all the people surrounding them," no evidence was ever found to support that they were planted.
.... Defendant Suggs has not established either prong of the Strickland test. Thus, trial counsel was not ineffective for failing to file a motion based on Massiah where no evidence to support the motion existed.
Postconviction Order at 4-5 (footnotes omitted).
Suggs premises both the Giglio claim and the Massiah claim on the factual allegation that Walton County Sheriff's Department employees conspired with Byars and Taylor to fabricate a confession by Suggs in order to secure a conviction. The postconviction court found that the trial record and the evidence presented at the evidentiary hearing provided no support for this allegation. Suggs now argues that the postconviction court ignored the various pieces of evidence he presented at the evidentiary hearing that proved the alleged scheme, including the testimony of George Broxson and Gerald Shockley.
George Broxson was an inmate residing in the cell with Suggs, Taylor, and Byars. Broxson's testimony mostly consisted of hearsay statements, which Broxson claimed were made to him by Taylor and Byars. Broxson also testified as to his opinions and assumptions concerning Taylor, *428 Byars, and the Walton County Sheriff's Department employees who operated the jail. Gerald Shockley was a former agent of the Federal Bureau of Investigation who was hired by prior collateral defense counsel to investigate potential postconviction claims. Shockley's testimony consisted of hearsay testimony based upon his interviews with George Broxson and James Taylor. Notably, Taylor and Byars did not testify at the postconviction evidentiary hearing.
Thus, the sum of the testimony in support of Suggs' claims of a Giglio violation and of ineffective assistance of counsel based on a Massiah violation was (1) the hearsay testimony of Broxson and Shockley as to what Byars and Taylor allegedly said to each of them; and (2) the assumptions made by Broxson about the conduct of the Sheriff's Department employees. There was no testimony by either Byars or Taylor, or factual evidence in support of these claims.
Furthermore, at the evidentiary hearing, the State called as a witness the Walton County Sheriff, who had been in charge of the jail at the time of Suggs' incarceration. Sheriff McMillan unequivocally denied instructing Byars or Taylor to extract or manufacture a confession.
It was for the trial judge to evaluate the credibility and weight of the evidence presented in the postconviction evidentiary hearing. We do not find that the postconviction court erred in finding that the evidence presented was insufficient to support Suggs' allegation that the confessions were fabricated. Additionally, we do not find that the postconviction court erred in finding insufficient evidence to support the claim that Byars and Taylor were state agents who were placed in Suggs' cell in violation of Massiah as part of an "overt scheme" to obtain incriminating statements from Suggs. See Lightbourne v. State, 438 So.2d 380, 386 (Fla.1983) (holding that a Massiah claim requires proof of an "overt scheme" in which the State takes part to obtain incriminating statements).
Because we affirm the postconviction court's finding in respect to the Massiah violation, we also affirm the court's finding that defense counsel was not ineffective for failing to file a motion based on Massiah. As the postconviction court noted, trial counsel testified at the evidentiary hearing that they investigated Taylor and Byars and did not find any information that Taylor and Byars were planted State agents. Trial counsel cannot be ineffective for failing to file a motion that could not be supported by the evidence.

B. Brady Claim
Suggs also contends that the State withheld exculpatory evidence from the defense. The evidence at issue in this Brady[7] claim involves a note from the prosecution to the medical examiner expressing concern that the estimated time of death occurred after Suggs had already been taken into custody. The medical examiner's report states that he began the autopsy at 9:15 a.m. on August 8, 1990. In his pretrial deposition, the medical examiner estimated that the victim died sometime during the twenty-four-hour period prior to the autopsy. This approximates the earliest time of death at 9:15 a.m. on August 7. However, Suggs was arrested at 5:04 a.m., and the body was found at 9 a.m. on August 7. The factual inconsistency of the twenty-four-hour period was obvious.
In order to establish a Brady violation, a petitioner must show that (1) the evidence at issue is exculpatory; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the *429 suppression caused prejudice that undermines confidence in the verdict. See Wright v. State, 857 So.2d 861, 869-70 (Fla.2003). The burden of proof is on the petitioner to demonstrate each of these elements. Id. at 870.
The postconviction court found that Suggs failed to satisfy the second and third prongs of the Brady standard because the evidence presented at the hearing showed that defense counsel was actually in possession of the note before the trial began. Although the prosecuting attorney stated that it is his usual practice not to hand over this kind of evidence to the defense, defense attorney Kimmel testified at the evidentiary hearing that he in fact received the memo directly from the prosecutor prior to the trial and assumed that he was being handed the document because it was possible Brady material. Since there was unequivocal testimony by the defense attorney stating that he had "an absolute memory of having seen this memo," the postconviction court's holding that the evidence was not suppressed by the State is based on competent, substantial evidence.
We find no error in the postconviction court's finding that no basis for relief existed concerning the note. That the medical examiner's earliest estimated time of death was after the body of the victim was found and four hours after Suggs' arrest were facts already available to the defense based on the medical examiner's deposition and the medical examiner's report. Moreover, there was no showing that the obvious time inconsistency was in any way material to Suggs' defense.

C. Ineffective Assistance of Defense Counsel During Guilt Phase
Suggs claims that his trial attorneys, Donald Stewart and Robert Kimmel, were ineffective. In order to prove ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient and that the deficiency caused prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To be deficient, the performance must fall below an objective standard of reasonableness based on prevailing professional norms. Id. at 688, 104 S.Ct. 2052. A reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 688-89, 104 S.Ct. 2052. In order to constitute reversible error, the standard requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Id.

1. Failure to Request Richardson Hearing
Suggs claims that his trial counsel was ineffective for waiving his right to a Richardson hearing after the State committed a discovery violation by failing to notify the defense before the trial that Judge Lewis R. Lindsey would be called as a witness. The prosecution used the testimony of Judge Lindsey in order to bolster the credibility of Wallace Byars, one of the two cellmates who testified against Suggs. About four months before trial, while on medical release from the Walton County Jail, where he had been serving a three-year sentence, Byars was arrested after a confrontation with his wife. Judge Lindsey's testimony explained that he was the one who authorized the medical release.
Suggs claimed on direct appeal that the trial court erred in not conducting a Richardson hearing. This Court denied relief because it found that defense counsel had waived the request for a Richardson hearing *430 by admitting that such a hearing would not cure the damage caused by the admission of Judge Lindsey's testimony. Suggs reasserts this claim by converting it into an ineffective assistance claim in this postconviction appeal. The postconviction court denied the claim and found that based on testimony by counsel at the evidentiary hearing, defense counsel made a tactical decision to move past the issue without needless delay. The court also found that counsel had the opportunity to adequately prepare for the judge's testimony, negating whatever harm was caused by the prosecution's neglect in notifying the defense of its witness. We find no error in the postconviction court's finding that counsel's performance was neither deficient nor prejudicial and therefore affirm the denial of relief.

2. Failure to Move for Mistrial During Medical Examiner's Testimony
Suggs claims that his trial counsel was ineffective for failing to insist on a mistrial during the medical examiner's testimony after two jurors became ill. The postconviction court denied this claim because it found that defense counsel adopted a reasonable tactic to confront and accept the brutal nature of the crime, while arguing that someone else was responsible for such brutality. Defense attorney Kimmel testified at the evidentiary hearing that he believed allowing a jury to react sensitively to the brutality of the crime was in furtherance of this tactic and that such a jury might show the defendant mercy. Suggs argues that this kind of tactic is patently unreasonable. This Court, however, has approved similar tactics. See, e.g., Engle v. Dugger, 576 So.2d 696, 700 (Fla.1991) (rejecting claim that counsel was ineffective for adopting tactic of not questioning the medical examiner's conclusions so as not to inflame the jury, given the gruesome nature of the testimony). We find no error in the postconviction court's finding that this was a reasonable strategy.

3. Failure to Address Presence of Victim's Fingerprints on Suggs' Vehicle
Suggs claims that his trial counsel was ineffective for failing to address why the victim's fingerprints were found in his vehicle. Suggs argues that his counsel should have called witnesses who would have testified that the victim was a friend of Suggs and that the victim and Suggs played pool together at the Hitching Post earlier on the day of the murder. In particular, Suggs points to the pretrial depositions of two individuals and the police statements of four other individuals. According to Suggs, if defense counsel had called such witnesses, the jury would have had reason to believe that the victim was in Suggs' vehicle of her own accord.
The postconviction court found that Suggs offered no evidence of an alternative explanation for the fingerprints and that Suggs therefore failed to establish a facially sufficient claim pursuant to Strickland. Suggs did not produce any of the witnesses at the evidentiary hearing who allegedly saw Suggs and the victim playing pool together. Suggs also refers to the content of police reports, but such reports were never admitted into evidence. Thus, Suggs offered no evidence in support of his argument. Moreover, at the evidentiary hearing, defense attorney Kimmel testified that an investigation was attempted on this matter but that no evidence was found to prove that the fingerprints were in the car for a legitimate reason. We therefore do not find error in the postconviction court's finding that trial counsel was not ineffective.

*431 4. Failure to Investigate Suspects Steve Casey and Raymond Hamilton
Suggs claims that his trial counsel failed to investigate the fabricated testimony of Steve Casey and Ray Hamilton. Casey testified that he was at home trying to sell his truck on the night his wife was murdered. Although he could not remember exactly how much money he received in exchange for the truck, he testified that he sold it for "something like" twelve or fifteen hundred dollars. Ray Hamilton corroborated this alibi by testifying that Casey informed him that he had sold the truck when the two spoke on the phone on the evening of the murder.
Suggs argues that if his counsel had investigated, they would have found evidence that contradicted Casey's alibi. However, defense attorney Stewart testified that prior to trial, defense counsel in fact conducted an investigation into the sale of the vehicle. According to Stewart, trial counsel checked public records for evidence of the sale, but the search did not produce any results. Stewart testified that after the trial, he received a phone call from the daughter of the man who purchased the truck. An investigator hired by Stewart had contacted the daughter, and she returned Stewart's call after the trial. Stewart testified that the woman told him that the car was sold on the day before the murder, not the day of the murder, as Casey and Hamilton claimed. Suggs alleges in his brief that the woman also told Stewart that the car was purchased for only three hundred dollars, far less than the estimated amount Casey gave during his testimony. However, Stewart's testimony at the evidentiary hearing did not address the sale price of the truck, and there is no other record evidence of this woman discussing the price of the truck with Stewart. We also note that the woman was not a witness at the postconviction evidentiary hearing.
The postconviction court found that trial counsel was not deficient in conducting the investigation and noted that the information concerning the sale of the truck was not discovered until after trial. The record supports this finding, and we affirm the postconviction court's denial of relief. Even if we were to assume a deficiency in failing to investigate this matter further, we find no basis in the record that establishes prejudice in support of Suggs' claim for relief.
Moreover, defense counsel challenged the credibility of Casey and Hamilton at trial, including proving that following the murder, Casey had quickly sought payment on a life insurance policy that he had on his wife. We therefore find no error in the postconviction court's conclusion that Suggs failed to show either a deficiency or prejudice.

5. Failure to Properly Respond to Jury Request to Have Testimony Read Back
Suggs claims that his trial counsel was ineffective for failing to respond to the jury's request to have the testimony of Steve Casey and Ray Hamilton read back. When it was discovered that the transcript could not be obtained for three hours, the judge gave the jury the option of withdrawing or renewing its request. The jury decided to withdraw its request. After an extended colloquy and a brief adjournment to research the legal issue, defense counsel informed the court that Florida law gives the court ultimate discretion in determining whether to have the testimony read back. The court decided in its discretion not to have the testimony read to the jury in light of the jury's withdrawal of its request. Suggs argues that defense counsel's statement to the court concerning Florida law was an unwarranted concession *432 on this issue. Suggs claims that competent counsel would have insisted that the jury hear the testimony regardless of the jury's preference.
The postconviction court found that defense counsel sufficiently expressed to the court their position that the testimony should be read back. The court further found that Suggs failed to establish that any prejudice resulted.
Defense counsel testified at the postconviction evidentiary hearing concerning the extensive discussion about this issue at trial. Defense attorney Stewart testified that it was his opinion that the original request to have the testimony read back reflected that the jury was on the defense's side on the issue of the credibility of Casey and Hamilton. Stewart testified that he was unsure if the jury hearing the testimony again would prove beneficial. Defense attorney Kimmel testified that he made a record of the fact that the request was being denied but noted that it is not his practice to make a judge reject requests multiple times before moving on. We find no error in the postconviction court's conclusion that defense counsel was not ineffective in responding to the jury's request for the read-back of the testimony. We also find support for the postconviction court's conclusion that Suggs did not establish prejudice.

6. Failure to Object to Prosecutor's Inappropriate Closing Statements
Suggs claims that his trial counsel was ineffective for failing to adequately challenge the prosecutor's deployment of the following tactics: (1) using a golden rule argument;[8] (2) stating that the victim was a missing witness;[9] (3) commenting on Suggs' Fifth Amendment rights;[10] (4) making derisive statements about the defense attorneys;[11] and (5) making similar derisive statements about defense experts.[12] The postconviction court, relying on Ferguson v. State, 593 So.2d 508 (Fla. 1992), held that counsel adopted a reasonable *433 strategy not to object to the prosecutor's comments. In Ferguson, this Court held that the choice not to object to a prosecutor's closing statements can be a tactical decision despite the fact that some of the comments were indeed objectionable. Ferguson, 593 So.2d at 511. As long as the prosecutor did not dwell upon the comments and they were not severely inflammatory or damaging, defense counsel remains effective. Id. Defense attorney Kimmel admitted at the evidentiary hearing that, in hindsight, maybe he should have made some objections but that his focus at the time was on maintaining a rapport with the jury and letting the prosecutor "hurt himself." Defense attorney Stewart testified that defense counsel decided not to object because the prosecution was raising issues that the defense wanted the State to address and thereby was tacitly acknowledging the defense's arguments on those issues. We find that the postconviction court did not err in finding no deficiency in defense counsel's performance. The postconviction court's order is also supported by this Court's holding on direct appeal, which, in addition to dismissing as procedurally barred the substantive claim that the prosecutor's statements deprived him of a fair trial, went on to find that Suggs' substantive claim was without merit. The postconviction court's denial of this claim is therefore affirmed.

7. Failure to Insist on Mistrial Based on Prosecutor's Comment that Suggs Had Previously Been in Jail
Suggs claims that his trial counsel was ineffective for not insisting on a mistrial when the prosecutor made a statement suggesting that Suggs had previously been in jail. After defense counsel objected to this statement and requested a mistrial, the court found that the prosecutor made no misrepresentation but that it was a "close call" as to whether the statement would lead a reasonable person to conclude that Suggs had been in jail. The defense and the State thereafter reached an agreement that the prosecutor would read a curative statement to the jury. A substantive claim concerning whether the curative statement was enough to dispel juror misapprehension was raised and rejected on direct appeal. Suggs, 644 So.2d at 68. Suggs now raises a derivative ineffective assistance claim, arguing that, as a matter of law, nothing could cure the prejudicial impact of such a statement and that defense counsel should have insisted on a mistrial. However, since we found on direct appeal that "the prosecutor's curative statement was sufficient to remove any impression created in the minds of the jurors that Suggs may have served time in prison," trial counsel was not ineffective for failing to insist on further relief, and Suggs could not have been prejudiced by counsel not insisting on a mistrial. Id. The postconviction court therefore properly denied relief.
Suggs further claims that the effect of the prosecutor's statement was exacerbated by the large police presence in the courtroom and the leg weight worn by Suggs throughout the proceedings. Suggs argues that this gave the jury a prejudicial impression that he was dangerous. However, Suggs presented no evidence at the evidentiary hearing to support his allegation that the jury actually observed and was affected by these security measures. We therefore affirm the postconviction court's denial of relief on this claim.

8. Cumulative Ineffective Assistance of Counsel During Guilt Phase
Suggs argues that if not individually, the effect of counsel's guilt-phase errors cumulatively deprived him of his right to a fair trial. Because he failed to prove a deficiency in any one of the above alleged instances of ineffective assistance of counsel, *434 Suggs' cumulative claim of prejudicial error also fails. Bryan v. State, 748 So.2d 1003, 1008 (Fla.1999) ("[W]here allegations of individual error are found without merit, a cumulative-error argument based thereon must also fall."). The postconviction court therefore properly denied this claim.

D. Ineffective Assistance of Counsel During Penalty Phase

1. Failure to Present Mitigation Evidence
Suggs claims that his trial counsel was ineffective at the penalty phase of his trial for failing to have Suggs evaluated by a mental health expert; failing to call a mental health expert as a witness during the penalty phase of the trial; failing to obtain and present mental health mitigation from school and medical records containing mitigation evidence; and failing to obtain and present evidence from Suggs' prison records in respect to Suggs' prior good behavior.
During the penalty phase, defense counsel focused on Suggs' good relationships with his family and evidence that Suggs had a reputation as a hard worker. Defense counsel called as witnesses Suggs' mother and two family friends, and submitted various letters and official documents in support of this mitigation.
Prior to defense attorneys Kimmel and Stewart undertaking the representation of Suggs and appearing as trial counsel for Suggs, Suggs had been represented by the Office of the Public Defender. The public defender had Suggs evaluated by psychologist Dr. James Larson, who saw Suggs in 1990 and 1991. Defense counsel did not call Dr. Larson as a witness in the penalty phase.
At the postconviction evidentiary hearing, defense attorney Kimmel testified that he had received a copy of Dr. Larson's report. The report stated that it was a preliminary evaluation because Dr. Larson had not yet received Suggs' school records and medical history, which would be necessary for a full assessment. Defense counsel never obtained the school records and medical history referred to in Dr. Larson's report. Defense attorney Kimmel told the postconviction court that he did not want to get into the defendant's school records because "there were some unpleasant things in Ernie's past that you wouldn't want a jury to hear about." Kimmel explained that he believed Suggs' records would contain damaging information because defense attorney Stewart was familiar with the Suggs family and had personal knowledge that Suggs had a history of bad behavior. Kimmel also pointed to several specific statements in Dr. Larson's report that would have been adverse to Suggs if Dr. Larson had been a trial witness. Kimmel testified that the report indicated that Suggs might be trying to influence the expert's evaluation to help Suggs' defense. Suggs was not cooperative with Dr. Larson and refused to complete a list of forty fill-in-the-blank questions. The report also stated that Suggs did not suffer from any mental infirmity, disease, or defect.
At the postconviction evidentiary hearing, Suggs presented testimony by neuropsychologist Dr. Barry Crown. Dr. Crown testified that Suggs exhibits a "depressed and morose affect" and suffers from a "deficit in intellectual efficiency" that causes him not to be able to "use the brains that he's got." Dr. Crown testified that Suggs has "a significant neuropsychological deficit and significant neuropsychological impairments, particularly in the functional areas of language based critical thinking and auditory selective attention." Dr. Crown stated that the results of his evaluation were indicative of organic brain damage in the frontal lobe of the brain, which was a long-term condition that may *435 have been aggravated by accidents and is exacerbated by alcohol or drugs. Dr. Crown stated that Suggs was not married, had no children, and had historically consumed alcohol, smoked marijuana, and "huffed." Dr. Crown also stated that Suggs' IQ tested at 102 and that Suggs suffered from no mental psychotic disorder and was within normal limits of intellectual functioning.
The postconviction court denied Suggs' claim, stating:
As to the allegation of ineffective assistance of counsel for failing to present mental health expert testimony of his mild neurological impairment, this allegation is without merit. Dr. Barry Crown testified for the defense at the evidentiary hearing. Dr. Crown stated that the Defendant did not suffer from any major psychotic disorder and that his IQ is within the normal limits. The Defendant has failed under the requirements of Strickland to establish that prejudice resulted to the Defendant even if the failure to present mental health expert testimony was, in fact, deficient performance. Even if the jury had given credit to the expert's opinion that Suggs suffered from an organic brain disorder, the jury would have also concluded that his IQ is within normal limits and he did not suffer from a major disorder. Thus, the Court is not persuaded that but for trial counsel's failure to present this evidence, the results of the proceeding would have been different.
Postconviction Order at 10-11 (footnotes omitted). We find no error in the postconviction court's denial of relief on this basis. We agree with the trial court that in view of the evidence of Suggs' average IQ level and that Suggs did not suffer from any major psychiatric disorder, the failure to obtain additional psychological evaluations at the time of the penalty phase or the failure to present expert mental health testimony has not been demonstrated to have been prejudicial to Suggs.
In respect to Suggs' claims concerning the failure to obtain school, medical, and inmate records, the trial court held:
The Defendant asserts ineffective assistance of counsel for failure to obtain school, medical and inmate records. Mr. Stewart testified that he knew the Defendant's family and knew the background of the Defendant. In trial counsels' opinion, the records were not very good for the Defendant. The school records would have reflected that the Defendant had been sent to military school for bad behavior and the inmate records would have referred to the murder conviction from Alabama. Trial counsel made a tactical decision not to include these records in their presentation to the jury during the penalty phase. As to the medical records, Mr. Kimmel testified that the Defendant would not cooperate with Dr. Larson and the report indicated that he would not cooperate. The Defendant has failed to establish that trial counsel rendered ineffective assistance for failure to obtain these records. Trial counsel knew the Defendant's background. They made a strategic decision not to present this information to the jury. Trial counsel's decision was reasonable and not ineffective assistance of counsel.
Postconviction Order at 11-12 (footnotes omitted). We agree with Suggs that defense counsel should have obtained the school records, medical records, and prison records so that counsel could make informed decisions as to how to represent Suggs. Defense attorney Stewart's personal familiarity with the Suggs family did not obviate counsel's duty to obtain the records. However, from a review of the *436 records which were obtained and presented at the postconviction evidentiary hearing, we conclude that Suggs was not prejudiced by the ineffectiveness in this regard. As the trial court noted, some of the records contained information, such as the prior murder and military school attendance, that was potentially damaging to Suggs.
In addition, Suggs failed to demonstrate how the records would have benefited him in the penalty phase. The school records Suggs presented at the hearing showed that Suggs received mostly failing grades in school. However, these grades are consistent with Dr. Crown's diagnosis of a mild neurological impairment. They indicate no major psychiatric disorder and confirm that Suggs had an average IQ. These records were not sufficiently mitigating to have made a difference in the outcome of the sentencing proceeding. Moreover, although Suggs claims that counsel failed to obtain prison records and other relevant medical history as additional evidence of Suggs' mental deficiency, Suggs did not submit any such prison records or medical records at the evidentiary hearing to demonstrate how he was prejudiced by counsel's failure to obtain these records.
Suggs also argues that counsel failed to present evidence showing that Suggs was a model prisoner during his incarceration for the prior murder conviction. Contrary to Suggs' contention, defense counsel in fact submitted portions of Suggs' incarceration record at the penalty phase of the trial. These records indicated that Suggs exhibited good behavior and was released from prison on numerous occasions for short periods of time to attend important family events including the funeral of his grandfather. At the postconviction evidentiary hearing, Suggs did not submit any additional evidence of good behavior that could have supplemented the mitigation evidence already admitted during the penalty phase. Thus, defense counsel was not ineffective since defense counsel presented the evidence that Suggs claims was omitted.
We have evaluated the penalty phase of Suggs' trial as a whole, and we conclude that our confidence in the outcome is not undermined. This was a brutal murder in which the trial court found five aggravators to exist, including a prior murder and the weighty aggravators of heinous, atrocious, or cruel (HAC) and cold, calculated, and premeditated (CCP).[13]
Suggs argues that his claim on this issue is supported by Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). We do not agree. Wiggins is consistent with Strickland in requiring a demonstration of prejudice as a basis for relief. In Wiggins, the Court specifically reiterates:
In order for counsel's inadequate performance to constitute a Sixth Amendment violation, petitioner must show that counsel's failures prejudiced his defense. Strickland, 466 U.S., at 692, 104 S.Ct. 2052. In Strickland, we made clear that, to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052.
*437 Wiggins, 539 U.S. at 534, 123 S.Ct. 2527. In Wiggins, the Court determined that counsel's failure to discover and present evidence was prejudicial. We conclude that Suggs has not demonstrated that he was similarly prejudiced.

2. Failure to Object to Unconstitutional Jury Instructions
Suggs claims that his trial counsel was ineffective for failing to sufficiently argue during the penalty phase that the jury instructions on the HAC and CCP aggravating factors were unconstitutionally vague. Suggs relies upon the United States Supreme Court's decision in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), wherein the HAC instruction given at Espinosa's penalty-phase proceeding was declared invalid. This claim is plainly without merit since we found in the direct appeal that the instruction given at Suggs' penalty-phase proceeding was not the instruction determined to be invalid in Espinosa. Suggs, 644 So.2d at 70. Furthermore, counsel could not be ineffective in failing to argue the Espinosa decision because the jury recommended a sentence of death on June 9, 1992, and Espinosa was not decided until June 29, 1992.
In respect to the CCP jury instruction, the CCP instruction was not declared unconstitutionally vague until 1994 by this Court's decision in Jackson v. State, 648 So.2d 85, 90 (Fla.1994). Since Jackson was decided, we have "consistently held that trial counsel cannot be held ineffective for failing to anticipate changes in the law." Cherry v. State, 781 So.2d 1040, 1053 (Fla.2000).
Finally, we denied the same claims in Harvey v. Dugger, 656 So.2d 1253, 1258 (Fla.1995), wherein the defendant claimed that counsel was ineffective for failing to object to the HAC and CCP instructions based on Espinosa and Jackson, because "trial counsel cannot be deemed ineffective under the test set out in Strickland for failing to object to these instructions when this Court had previously upheld the validity of these instructions." We therefore affirm the postconviction court's denial of relief.

E. Newly Discovered Evidence
In order to obtain postconviction relief from a conviction on the basis of newly discovered evidence, a defendant must establish that the newly discovered evidence could not have been discovered by the defendant or his counsel within the time limitations set out in Florida Rule of Criminal Procedure 3.851 and would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla. 1998).
Suggs' newly discovered evidence claim centers upon convicted murderer Alex Wells. Suggs claims that new evidence shows that Wells confessed to killing Pauline Casey. Wells allegedly confessed to George Broxson while both were inmates in the Walton County Jail.
Additionally, Suggs claims that new evidence demonstrates that Wells had committed other murders and kidnappings which were factually similar to the murder and kidnapping of Pauline Casey. Suggs claims that the evidence was unknown until after Suggs' conviction and sentencing.
Broxson and Wells both testified at the evidentiary hearing. Wells testified that he did not kill Pauline Casey and denied confessing to Broxson.
The postconviction court found Broxson to not be credible. The court, citing State v. Savino, 567 So.2d 892 (Fla.1990), further found that the murder-kidnappings committed by Wells were not demonstrated to be sufficiently similar to be admitted at a *438 new trial as "reverse-Williams rule evidence."[14] We find no basis upon which to find that the postconviction court erred in the denial of relief.

F. Ineffective Assistance for Failing to Ensure Petitioner's Presence at Jury Selection
Suggs claims that his trial counsel was ineffective for waiving Suggs' right to be present during certain portions of jury selection. While Suggs was absent, both parties made stipulations to strike three jurors for cause based on their answers to the jury questionnaire. When Suggs rejoined the proceedings, the trial judge explained everything that had occurred outside of his presence, asked if he had any questions, and gave Suggs an opportunity to confer with his counsel. The postconviction court denied postconviction relief because Suggs "failed to provide sufficient facts illustrating prejudice or how the outcome of his trial may have been different." State v. Suggs, No. 90-0338-CF, at 12 (Fla. 1st Cir. Ct. order filed March 17, 2000). Suggs' brief in this appeal states that counsel's failure to ensure Suggs' presence at the jury proceedings "prejudiced Mr. Suggs' right to a fair trial and denied him the right to be meaningfully involved in the defense of his case." Initial Brief of Appellant at 83. However, Suggs does not explain how the alleged deficiency prejudiced the outcome of his trial. We do note that two of the three prospective jurors who were struck for cause admitted they had already formed an opinion that Suggs was guilty. Because Suggs did not provide any basis for finding prejudice, the postconviction court's order denying the claim is affirmed.

G. Conflict of Interest
Suggs claims that the attorney who represented him during the initial stages of the pretrial proceedings was ineffective because of a conflict of interest. The record shows that the same attorney from the public defender's office represented both Suggs and Wallace Byars during the period when Suggs and Byars were housed in the same jail cell and when Byars gave statements to the police that Suggs had confessed to murdering Pauline Casey.
To establish ineffective assistance on the basis of a conflict, Suggs must demonstrate that "counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." Wright v. State, 857 So.2d 861, 871-72 (Fla.2003).
In its order initially dismissing this claim, the postconviction court found that the claim was insufficiently pled because Suggs failed to identify a deficiency in his trial counsel's performance that resulted from the conflict of interest. The court dismissed the claim without prejudice and granted leave to amend. Suggs' subsequent amendment to the motion added nothing more to this claim.
We do not find error in the postconviction court dismissing the claim. Although it is plain that Suggs and Byars had interests adverse to each other, Suggs' postconviction motion failed to allege that his attorney took any action furthering the interests of Byars that prejudiced Suggs. The assistant public defender represented Suggs for a brief time and was no longer appearing on behalf of Suggs thirty-five days after Suggs' arrest. Moreover, the public defender's office eventually withdrew *439 from the case, and Suggs retained private counsel eleven months before the trial began. Petitioner fails to allege a connection between the conflict of interest and a specific deficiency that prejudiced him. See Hunter v. State, 817 So.2d 786, 792 (Fla.2002) (holding that after a defendant has demonstrated the existence of an actual conflict, "the defendant must also show that this conflict had an adverse effect upon his lawyer's representation"). Suggs failed to further amend his claim when given leave to do so.

H. Counsel's Waiver of Defendant's Rights
Suggs claims that his rights were repeatedly waived by trial counsel without his knowledge or consent. This claim incorporates and reargues other claims raised in this rule 3.850 motion.[15] The claim does not raise any independent issues that merit discussion.[16] Because we have rejected these claims elsewhere, we affirm the postconviction court's denial of relief.

I. Validity of Warrants
Suggs claims that his right to be free from unreasonable searches and seizures was violated because the warrants authorizing the searches of his home and vehicle did not meet the particularity requirement. The postconviction court denied relief on the basis of a procedural bar since the issue should have been raised on direct appeal when this Court reviewed the trial court's denial of Suggs' motion to suppress. Any challenge to the denial of the motion to suppress should have been raised on direct appeal. Since the particularity allegation was not raised on direct appeal, we agree with the postconviction court that this claim is procedurally barred.
Suggs alternatively argues that trial counsel was ineffective for failing to raise in the pretrial motion to suppress the particularity requirement as a ground for excluding the evidence seized under the warrants. However, Suggs provided no basis to the postconviction court or this Court upon which to find that counsel was ineffective for failing to raise the particularity requirement for the issuance of a warrant. Suggs did not include this point in his "Written Closing Arguments" to the postconviction court, and consequently the trial judge did not include the issue in his order. We therefore affirm the postconviction court's general denial of relief as it relates to this issue.

J. Innocence of the Death Penalty
Suggs claims that there are insufficient aggravating circumstances to establish his eligibility for the death sentence. In order to succeed on this claim of innocence of the death penalty, a petitioner must demonstrate that each aggravating circumstance found by the court was invalid. Vining v. State, 827 So.2d 201, 216 (Fla.2002); see also Allen v. State, 854 So.2d 1255, 1257 n. 3, 1258 n. 5 (Fla.2003) (rejecting innocence of death penalty claim because petitioner did not allege that all of *440 the aggravating circumstances supporting his death sentence were invalid). Suggs has not made such a showing. He challenges the validity of only two of the seven aggravating factors found by the trial judge in this case  the HAC and CCP aggravating factors. Moreover, we have already rejected his challenge to the HAC and CCP aggravating factors in both the direct appeal and this postconviction appeal.
Suggs also claims that his death sentence is disproportionate. Although this Court did not discuss its proportionality analysis on direct appeal, a proportionality finding is supported.[17] The trial judge found seven aggravating factors[18] and only three mitigating factors.[19] Moreover, as the trial judge explained in his sentencing order and as we noted on direct appeal, this murder was particularly heinous and premeditated. Suggs, 644 So.2d at 70 (quoting trial judge's sentencing order). This Court has upheld the death penalty as a proportionate sentence for similar crimes. See, e.g., Owen v. State, 862 So.2d 687 (Fla.2003) (finding death sentence proportionate despite the presence of three statutory mitigators and sixteen other mitigators where there was evidence of multiple stab wounds and the presence of multiple aggravators, including HAC, CCP, and a conviction for another murder); Rose v. State, 787 So.2d 786 (Fla.2001) (finding death sentence proportionate despite the presence of eleven nonstatutory mitigators where trial judge found four aggravators murder committed while on probation, prior violent felony, murder committed during a kidnapping, and HAC).

K. Inability to Interview Jurors
Suggs claims that his constitutional right to litigate claims of juror misconduct was violated by Florida Rule of Professional Conduct 4-3.5(d)(4), which prohibits a lawyer from communicating with jurors in any case to which the lawyer is connected. Suggs could have and should have brought this claim on direct appeal. Since he did not, the postconviction court was correct to find that the claim was procedurally barred. The postconviction court also properly found this claim to be meritless. This Court has consistently rejected constitutional challenges to rule 4-3.5(d)(4). See, e.g., Power v. State, 886 So.2d 952, 957 (Fla.2004); Johnson v. State, 804 So.2d 1218 (Fla. 2001). Moreover, the rule provides a mechanism for defendants to interview jurors when there are good faith grounds for a challenge. Before an attorney will be allowed to interview any member of the jury, the moving party must make sworn allegations that, if true, would require a new trial. Johnson, 804 So.2d at 1225. Suggs has neither filed a motion requesting permission to interview jurors, alleged any specific juror misconduct, nor submitted any sworn statements in this regard. His claim appears to be nothing more than a request to investigate possible grounds for finding juror misconduct. See Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000) (finding that a defendant does not have a right to conduct "fishing expedition" interviews with the jurors after a guilty verdict is returned).[20]

*441 L. Unconstitutionality of Death Penalty
Suggs claims that Florida's capital sentencing scheme violates due process rights and constitutes cruel and unusual punishment on its face and as applied to him. In particular, Suggs argues that Florida's death penalty statute fails to adequately channel the jury's discretion as required by United States Supreme Court precedent. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The postconviction court summarily denied this claim without an evidentiary hearing. The court's denial of relief was proper because this claim is without merit. The United States Supreme Court has repeatedly reviewed and upheld Florida's death penalty statute. See, e.g., Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

M. Death by Electrocution or Lethal Injection
Suggs claims that execution by electrocution or lethal injection constitutes cruel and unusual punishment. Since this claim was not raised on direct appeal, it is procedurally barred. This claim is also without merit because this Court has consistently rejected arguments that these methods of execution are unconstitutional. See, e.g., Sochor v. State, 883 So.2d 766, 789 (Fla.2004) (rejecting claims that both electrocution and lethal injection are cruel and unusual punishment); Provenzano v. Moore, 744 So.2d 413, 414-15 (Fla.1999) (holding that execution by electrocution is not cruel and unusual punishment); Sims v. State, 754 So.2d 657, 668 (Fla.2000) (holding that execution by lethal injection is not cruel and unusual punishment).

N. Insane to be Executed
Suggs claims that he is insane to be executed. Suggs admits that this claim is not ripe for review and states that he raises the claim in order to preserve it for future proceedings should a warrant be issued to carry out the execution of his sentence. Since the claim is not ripe for review, we affirm the postconviction court's denial of relief.

O. Failure to Conduct Cumulative Error Analysis
As Suggs argued with respect to the individual ineffective assistance claims, he also argues that the cumulative effect of all of the alleged guilt-phase errors deprived him of his right to a fair trial. This Court considers the cumulative effect of evidentiary errors and ineffective assistance claims together. State v. Gunsby, 670 So.2d 920, 924 (Fla.1996) (granting a new trial on the basis of the combined effect of newly discovered evidence, the erroneous withholding of evidence, and ineffective assistance of counsel). However, a claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges. Bryan, 748 So.2d at 1008.
In conducting its cumulative error analysis, the postconviction court took into consideration all of Suggs' claims, including his allegations of Giglio, Massiah, and Brady violations, and his claims of newly discovered evidence and ineffective assistance of counsel. The court denied relief *442 because Suggs did not successfully prove any of his individual claims, finding that overall, trial counsel was not ineffective and the evidence would not have produced a different result on retrial. Because we affirm the portions of the postconviction court's order finding no error with respect to each guilt-phase claim, we also find that no cumulative error resulted.

III. PETITION FOR WRIT OF HABEAS CORPUS
Suggs' habeas petition raises various claims, all of which rely on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).[21] Because we have held that Ring is not retroactively available to defendants whose convictions became final before Ring was decided, we deny the petition. Johnson v. State, 904 So.2d 400, 407 (Fla.2005). In addition, Suggs' sentence satisfies the requirements of Ring because the trial court found as aggravating circumstances that Suggs has previously been convicted of another capital felony and a felony involving the use or threat of violence. See, e.g., Doorbal v. State, 837 So.2d 940, 963 (Fla.2003) (rejecting defendant's Ring claim because the sentence was supported by the aggravating factor of a prior violent felony which had been charged by indictment and was found by a unanimous jury beyond a reasonable doubt).

IV. CONCLUSION
For the reasons discussed above, we affirm the circuit court's denial of postconviction relief and deny the petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial court found the following aggravating factors: (1) the capital felony was committed while Suggs was under a sentence of imprisonment; (2) Suggs was previously convicted of another capital felony and a felony involving the use or threat of violence; (3) the capital felony was committed while Suggs was engaged in the commission of the crime of kidnapping; (4) Suggs committed the capital felony for the purpose of avoiding or preventing lawful arrest; (5) the capital felony was committed by Suggs for pecuniary gain; (6) the capital felony was especially heinous, atrocious, or cruel; (7) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
[2] The trial court found the following mitigating factors: (1) the capacity of Suggs to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired because he had been drinking at the time of the incident; (2) Suggs came from a good family background; and (3) Suggs' employment background showed that he was a hard worker.
[3] On direct appeal, Suggs made the following claims: (1) the trial court erred in allowing Judge Lewis R. Lindsey, who was not on the witness list, to testify against Suggs without holding a Richardson hearing, Richardson v. State, 246 So.2d 771, 775 (Fla.1971); (2) the trial court erred in allowing evidence improperly seized at Suggs' home after he was illegally detained and after police obtained an invalid consent; (3) the trial court erred when it denied Suggs' motion for a mistrial based on the prosecutor's statement suggesting that Suggs had previously been in jail; (4) the tactics used by the prosecution denied Suggs a fair trial; (5) Suggs' conviction for kidnapping was based on insufficient evidence; (6) the trial court erred in allowing the in-court identification of Suggs by Ray Hamilton; (7) the trial court erred in admitting into evidence a book entitled Deal the First Deadly Blow; and (8) the trial court erred in allowing certain evidence in aggravation and in instructing the jury on certain aggravating factors.
[4] Huff v. State, 622 So.2d 982 (Fla.1993).
[5] Suggs argues in this appeal that the postconviction court should have provided relief on the following claims: (1) the State knowingly presented false and misleading evidence by two jailhouse informants who testified that Suggs confessed to the murder; (2) defense counsel was ineffective for failing to allege a Massiah violation based on the State's use of planted police informants, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); (3) the State withheld exculpatory evidence concerning the time of death; (4) defense counsel was ineffective for waiving Suggs' right to a Richardson hearing after the State failed to notify the defense that Judge Lindsey would be called as a witness; (5) defense counsel was ineffective for failing to move for a mistrial during the medical examiner's testimony when two jurors became physically ill; (6) defense counsel was ineffective for failing to address the presence of the victim's fingerprints on Suggs' vehicle; (7) counsel was ineffective for failing to investigate the fabricated testimony of Steve Casey and Raymond Hamilton; (8) defense counsel was ineffective for failing to properly respond to the jury's request to have the testimony of Casey and Hamilton read back; defense counsel was ineffective for failing to object to improper conduct by the prosecutor during closing statements, including (9) making a blatant golden rule argument, (10) repeatedly stating that the victim was a missing witness, (11) commenting on Suggs' Fifth Amendment rights, (12) accusing defense counsel of putting up a "smoke screen" and creating a "diversion," and (13) calling defense experts "hired guns" and "Monday morning quarterbacks"; (14) defense counsel was ineffective for failing to insist on a mistrial when the prosecutor told the jury that Suggs had previously been in jail; (15) defense counsel was cumulatively ineffective during the guilt phase; (16) defense counsel was ineffective during the penalty phase for failing to offer evidence of mental health mitigation and Suggs' good incarceration record; (17) defense counsel was ineffective for failing to object to unconstitutional jury instructions; (18) Suggs is entitled to relief on the basis of newly discovered evidence showing that another individual, Alex Wells, confessed to the murder; (19) defense counsel was ineffective for failing to ensure Suggs' presence at critical stages of his trial; (20) Suggs' right to conflict-free counsel was violated; (21) defense counsel improperly waived Suggs' constitutional rights; (22) Suggs' right to be free from unreasonable search and seizure was violated, and his counsel was ineffective for failing to challenge the validity of the search warrant issued to search Suggs' home and vehicle; (23) Suggs is innocent of the death penalty; (24) Suggs' due process rights were denied when he was prohibited from interviewing jurors; (25) Florida's death penalty statute is unconstitutional; (26) death by electrocution or lethal injection is cruel and unusual punishment; (27) Suggs is insane to be executed; and (28) the postconviction court failed to conduct a cumulative error analysis.
[6] Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
[7] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[8] Petitioner claims that the prosecutor improperly vouched for the credibility of Steve Casey. The prosecutor's comments at issue here include the following statements made during closing statements:

You know, I don't know how many of you have ever lost a close family member and had to bury one. You know, it's not an easy time. This kind of case is perhaps, perhaps the most difficult, when all of a sudden, you know, you're talking to your wife one minute on the telephone and then a couple of hours later you find out that she's missing and then some eight or nine hours later you find out that she's been brutally murdered. I don't know that I would recall everything that happened around that time.
[9] The prosecutor's comments at issue are as follows:

You know, and let's not forget that, you know, the one person that's not here, the person that is killed in this case, Pauline Casey.... While she can't talk to us today, she did leave enough to name her murderer.
....
... [A]s to the only witness that could actually say she was taken out of the bar it was her.
But she can't talk, she can't talk verbally to us today.... She's talked to you, she has pointed to the person that murdered her, in her own way.
[10] The prosecutor made numerous comments about Suggs' failure to produce evidence or testimony. These comments did not specifically address Suggs' failure to testify, but they did emphasize that Suggs did not provide an explanation for any of the incriminating evidence presented by the prosecution.
[11] The prosecutor stated multiple times that defense counsel was putting up a "smoke screen" and trying to "create a diversion."
[12] The prosecutor characterized defense experts as "hired guns" and "Monday morning quarterbacks."
[13] Larkins v. State, 739 So.2d 90, 95 (Fla. 1999) (noting that HAC and CCP are "two of the most serious aggravators set out in the statutory sentencing scheme"); see also Sireci v. Moore, 825 So.2d 882, 887 (Fla.2002) (noting that the prior violent felony conviction and HAC aggravators are "two of the most weighty in Florida's sentencing calculus").
[14] See Williams v. State, 110 So.2d 654 (Fla. 1959); Savino, 567 So.2d at 893-94 (setting forth the test for determining the admissibility of similar-fact evidence of past crimes offered for the purpose of identifying the perpetrator of the crime being tried).
[15] Suggs claims that the following rights were waived: his right to a Richardson hearing; his right to be present at jury selection; his right to conflict-free representation; and his right to be free from unreasonable searches and seizures. We note that, respectively, these claims amount to arguments raised by Suggs under different claims. See supra Parts II.C.1., F.-G.; infra Part II.I.
[16] In addition to incorporating previously argued claims, Suggs also argues that counsel waived his right to confidentiality by handing over to the prosecutor an expert's report of a mental health evaluation of Suggs. This claim wholly lacks merit. Even if Suggs' allegations regarding counsel's conduct were true, Suggs could not have been prejudiced because the report was not admitted into evidence at trial.
[17] The fact that proportionality is not mentioned in the written opinion does not mean that a proportionality review was not conducted. Nor does it warrant a reversal. Patton v. State, 878 So.2d 368, 380 (Fla.2004).
[18] See supra note 1.
[19] See supra note 2.
[20] The only matter specifically identified by petitioner about which he would like to interview jurors is the effect that the medical examiner's testimony had on the jury. This is not a proper matter for jury inquiry because it concerns the subjective impressions of the jurors and not any overt prejudicial act. See Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97, 99-100 (Fla.1991).
[21] Suggs makes the following claims in the habeas petition: (1) Florida's capital sentencing scheme is unconstitutional because it does not require the jury to reach a unanimous verdict based on evidence beyond a reasonable doubt with respect to aggravating factors; (2) the instructions read at Suggs' trial were unconstitutional because they instructed the jury to consider an "automatic aggravating factor" and shifted the burden of proof to the defendant to prove that the mitigating circumstances outweighed the aggravating circumstances; and (3) Suggs' death sentence is invalid because the elements of the aggravating factors were not charged in the indictment.